# THE CENTRAL CONSTRUCTION CORPORATION, EMPLOYER, AND THE MARYLAND CASUALTY COMPANY, INSURER,

## *vs.*

## JOEL HARRISON.

*Workmen's Compensation Act—Injury in Course of Employ-*
*ment—Transportation to Place of Work—Railroad Train.*

Where the contract of employment provided for free trans-
portation of the employee to and from his work, and the em-
ployee, having boarded a work train for the purpose of going to
his work, was directed by the ticket collector of the train to
change to another train, and was injured while attempting to
board the latter train, *held* that the injury arose out of and in
the course of the employment, regardless of the fact that the
train which he was attempting to board was not a work train,
but a regular passenger train.                    pp. 262, 263

That the fare of the claimant and other employees was, by
reason of the fact that the employer was engaged in construc-
tion work for the United States Government, paid by the latter
under an arrangement with the railroad company, did not show
that the claimant, when injured, was not using the transporta-
tion which the employer agreed to furnish.        pp. 261-263

The provision of the Workmen's Compensation Act for the
submission of questions of fact to the jury does not contemplate
a return to the practice under Acts 1894, Ch. 185, authorizing
special findings of fact by the jury in addition to a general ver-
dict.                                                    p. 264

A question of fact, proposed for submission to the jury: "Did
the injury complained of arise out of and in the course of"
claimant's "employment?" while in itself unobjectionable, was
properly refused when this was the only issue of fact involved,
and it was clearly submitted to the jury by the instructions
granted.                                                p. 264

The proper and better practice is to present to the court proposed questions of fact for submission to the jury, in time to be passed upon by the court before the jury is sworn. p. 265

*Decided December 2nd, 1920.*

Appeal from the Baltimore City Court (DOBLER, J.).

The appellants' sixth prayer, as modified by the court, was as follows:

The court instructs the jury that if they shall believe from the evidence that the employer did not furnish *or agree to furnish* the employee with free transportation; or if they shall further believe that the Central Construction Corporation did not provide *for* the vehicle or means of conveyance which the employee was riding upon or attempting to board at the time he was hurt, then in that event the award of the Industrial Accident Commission shall be reversed and the verdict of the jury shall be for the defendants.

The questions of fact proposed by the appellants were as follows:

"Question 1—Was the employee, Joel Harrison, injured while boarding a train of the Pennsylvania Railroad Company?

"Question 2—Was the train by which Harrison was hurt operated for the sole use of employees of the Central Construction Company?

"Question 3—Could any persons other than employees of the Central Construction Company ride upon the train by which Harrison was hurt?

"Question 4—Was the employee injured while upon any property on which the Central Construction Company was engaged in the performance of work?

"Question 5—Did Central Construction Corporation contract with the Pennsylvania Railroad Company to pay it for the transportation of Harrison from Baltimore to Magnolia on the day he was injured?"

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, URNER, and OFFUTT, JJ.

*Walter L. Clark* and *Austin J. Lilly,* for the appellant.

*Clifton S. Brown,* with whom was *Milton Roberts* on the brief, for the appellee.

THOMAS, J., delivered the opinion of the court.

This is the second appeal in this case. On the first appeal, reported in 135 Md. 170, this Court, in its statement of the case, said: "Joel Harrison (the appellee here) was an employee of the Central Construction Company, a corporation which was doing certain construction work for the United States Government at Edgewood Arsenal, Magnolia, Maryland. He was seriously injured on the 19th of June (July), 1918, and thereafter filed a claim for compensation with the State Industrial Accident Commission against the Central Construction Company, employer, and The Maryland Casualty Company, insurer, and was awarded compensation by that body. An appeal was taken by the employer and insurer. The appeal was heard in the Baltimore City Court, without a jury, upon a transcript of the record from the Commission, in addition to certain facts set forth in a stipulation between the parties filed in the case and which appears in the record. * * * At the conclusion of the case the court ruled, as a matter of law, that the injury described in the stipulated facts and in the papers in the case, under the circumstances there described, was not one which arose out of and in the course of his employment within the meaning of the Maryland Workmen's Compensation Act, and in accordance with this holding the decree of the State Industrial Accident Commission was reversed. From the judgment reversing the award of the Commission the appeal before us was taken." Having referred to the provisions of the Maryland Act, this Court said, in disposing of the case: "In this case it is not

disputed that the appellant was engaged in an extrahazardous employment. The sole question in the case is: Did his injuries arise out of and in the course of that employment? The stipulation to which we have referred discloses the facts and circumstances of the employment as well as the circumstances under which the injuries were received, and, in the view we take of the case, it will be sufficient to refer to what we regard as the controlling and determining facts appearing in the stipulation.

"The appellant lived in Baltimore City. It was a part of his contract with the Central Construction Company that it would furnish him free transportation to his work at Magnolia. He and other workmen of the Construction Company used certain work trains over the Pennsylvania Railroad from Union Station, Baltimore, to and from their work. The Construction Company furnished him a button for identification, and this button was evidence to the conductor of his right to free transportation. The superintendent of the company said to the workmen, as expressed in the evidence before the Commission, you have 'free transportation on your button.'

"It appears from the stipulated facts that, 'on July 19, 1918, Joel Harrison, the employee and claimant in this cause, proceeded to Union Station and there was directed to board what he understood to be a work train of the Pennsylvania Railroad Company bound for Magnolia; and that after boarding said train and after same had left Union Station he was told by a railroad official of said train, the Pennsylvania ticket collector, that the train did not stop at Magnolia, but stopped only at Aberdeen, and that he (Harrison) should leave the train where it made a stop just before reaching Back River Station, and take the following work train.

" 'That accordingly Joel Harrison left said train at the point in the preceding paragraph indicated and walked a distance of several hundred feet into Back River Station, and

was there told by the Pennsylvania Railroad Company's policeman that the following train would not stop at Back River Station, but would stop at the same point where the train which Harrison had just left had stopped, to wit, several hundred feet from the station; that thereupon Harrison went back to the point that he had just left the first train, and was proceeding to board the following train, which in the meantime had pulled in and stopped, when the train suddenly started and threw him under the wheels, causing an injury which directly resulted in the loss of his right foot at a point midway between the knee and ankle.'

"When the injury occurs before the beginning or after the termination of work there are two general rules applicable to the question as to whether it arose out of and in the course of the employment. The first is that an employee, while on his way to work, is not in the course of his employment. The second is that where the workman is employed to work at a certain place, and as a part of his contract of employment there is an agreement that his employer shall furnish him free transportation to and from his work the period of service continues during the time of transportation, and if the injury occurs during the course of transportation it is held to have arisen out of and in the course of employment. The cases relied on by the appellees announce and apply the first rule. The second rule has the support of English and American cases."

After referring to these cases, this Court held that the lower court had committed an error in its ruling referred to, and in reversing the award of the Commission, and the judgment was accordingly reversed and a new trial awarded.

Upon the handing down of the opinion and order of this Court, the appellees in said case, the appellants here, filed a motion for a reargument, with an elaborate brief in support of their contentions, on the following grounds:

"(1) That this Court had misapprehended vital and fundamental facts upon which the decision in this case

necessarily turns and has applied to the facts, as so misconceived, decisions and authorities which, while entirely applicable to the facts assumed, would, if applied to the real facts, result in a contrary decision.

"(2) That it appears from the stipulation contained in the record that the claimant was hurt while trying to board a train of the Northern Central Railway at a point far from the premises and place of the work of the employer.

"(3) That said train was not provided for the exclusive use of the employees of this employer.

"(4) That the train which the claimant was attempting to board was not furnished by the employer, nor was the fare paid by the employer, either directly or indirectly, but, on the contrary, the fare of all the workmen employed on the construction work was paid for by the United States Government under its arrangement with the railroad company."

All of the facts relied on in the motion for reargument clearly appeared in the record of that appeal, and had not been overlooked by the court in its decision, and the motion was accordingly overruled.

The present appeal is by the employer and insurer from a judgment of the Baltimore City Court affirming the action of the State Industrial Accident Commission.

At the second trial the case was submitted on the evidence taken before the Commission and the facts agreed to in the stipulation, all of which were set out in the record of the former appeal and are contained in the present record, and some additional evidence produced by the appellants. The record contains four exceptions, three to the rulings of the court on the evidence and one to the action of the court on the prayers, and its refusal to submit to the jury certain questions of fact proposed by the appellants.

The additional evidence produced by the appellants at the second trial does not change or affect the material facts pre-

sented by the record of the former appeal. The present record shows, as did the record in the first appeal, that the appellee lived ·in Baltimore City, and that as a part of his contract with the Central Construction Corporation that corporation agreed to furnish him free transportation to his work at Magnolia; that after his employment, and prior to July 10th, 1918, the Central Construction Corporation arranged for the payment of the transportation expense of its employees over the Pennsylvania Railroad Company's lines and was allowed therefor by the United States Government under the terms of its percentage contract with the Government, and that after July 10th, 1918, "the United States Government, by virtue of an arrangement made through its War Department and by its direct representatives with the Pennsylvania Railroad Company, paid the Pennsylvania Railroad Company direct, without the intervention of the Central Construction Corporation, an agreed sum for the transportation of employees of the Central Construction Corporation and employees of other contractors engaged upon work at Edgewood Arsenal"; that for some time after the appellee was employed the Pennsylvania Railroad Company had regular trains on regular schedules, which carried the workmen of the several contractors at Edgewood Arsenal, to and from Magnolia, and that "the so called special work trains were put on simply because the increasing number of workmen made it difficult, if not impossible, to handle the situation on the regular trains." The only new ·feature of the case presented by such additional evidence offered by the appellants is the testimony of William Bowen Lane, the conductor of the train which the appellee was attempting to board at the time he was injured, to the effect that that train was not a work train, but a regular passenger train. But it appears in this record, as it did in the former record, that the appellee left Union Station on a train which he was informed was and believed to be a work train, and that he left that train and attempted to board the train ·by which he was injured

in pursuance of directions given him by the agents of the Pennsylvania Railroad Company in order to reach the place of his work at Magnolia. On the former appeal it was not deemed necessary under the circumstances for it to appear that the train the appellee attempted to board was a *work train,* and the fact that it was not cannot be regarded as material here.

The rejected prayers of the appellants present the same legal propositions contended for by them on the former appeal, and in support of their motion for a reargument, and, for the reasons stated in the decision of this Court in that case, were properly rejected by the court below. For the same reasons there was no error in the modification by the court of the appellants' sixth prayer. The special exception to the appellee's prayer was on the ground that there was no evidence legally sufficient "to prove that the claimant was using the transportation which the employer agreed to furnish," and under the decision in the former appeal was properly overruled. The exceptions to the rulings on the evidence were not pressed in this Court, and it is only necessary to say that we find no error in any of them.

At the conclusion of the evidence the appellants asked the court to submit to the jury two sets of "questions of fact," and after submitting their prayers requested the court to submit to the jury another question of fact. In *Schiller* v. *B. & O. R. R. Co., ante* p. 235, we had occasion to consider Section 56 of Article 101 of the Code providing: "Upon the hearing of such an appeal the court shall, upon motion of either party filed with the clerk of the court according to the practice in civil cases, submit to the jury any question of fact involved in such case," and we there held that the trial court is not required to submit as an issue every subordinate fact, and that to do so would cause confusion, but that the "facts submitted as issues should, as far as practicable, be confined to the ultimate issues involved in the finding of the Commission from which the appeal is taken, such as dis-

ability, dependency, whether the injury arose out of and in the course of employment, and the like, according to the material fact or facts to be determined." Under this construction of the section of the Code mentioned it is clear that the court below properly refused to submit any of the questions of fact proposed in the first two sets of questions. These questions suggest the practice that grew up under Chapter 185 of the Acts of 1894, authorizing special findings of fact by the jury in addition to a general verdict, and which fell into such disfavor in the profession that the Act was repealed by Chapter 641 of the Acts of 1900. 1 *Poe, Pl. & Pr.,* Secs. 758 and 758-A; 2 *Poe, Pl. & Pr.,* Sec. 332-A. One of the purposes of the Workmen's Compensation Act was to secure to injured employees certain and prompt compensation for injuries sustained, without, as far as practical, the delays and pitfalls incident to technical procedure, and a return to the practice under the Act of 1894 was not contemplated and should not be encouraged in such cases.

There is no objection to the third question of fact proposed by the appellants, which was, "Did the injury complained of arise out of and in the course of his (the appellee's) employment?" But that was the *only* issue of fact involved in the controversy, and it was clearly submitted to the jury by the instructions granted by the court below. A general verdict of the jury in favor of the appellants or appellee would have been a complete answer to that question, and there was, therefore, no error in the refusal of the court below to submit it in the form proposed by the appellants. *Schiller* v. *B. & O. R. R. Co., supra.* The *Reporter* is requested to set out the questions of fact proposed by the appellants in his report of the case.

It appears from the record that the questions of fact proposed by the appellants were not presented to the court below until after the conclusion of the testimony, and that was the practice followed under the Act of 1894, Chapter 185. 1 and 2 *Poe, Pl. & Pr., supra; Baltimore Traction Company*

v. *Appel,* 80 Md. 610 and 611. But if, as suggested in *Schiller* v. *B. & O. R. R. Co., supra,* the practice in cases of issues sent from the orphans' courts and courts of equity to courts of law for trial is the most appropriate one to follow, the proper and better practice in cases under the Compensation Act would be to frame and present the questions of fact to the trial court so that they may be passed upon by the court before the jury is sworn.

Finding no error in the rulings of the court below, the judgment appealed from will be affirmed.

*Judgment affirmed, with costs.*