GRAY MILLER *v.* STATE COMPENSATION COMMISSIONER *et al.*

(No. 9499)

Submitted September 1, 1943.   Decided October 5, 1943.

*Arthur S. Dayton* and *Charles Love,* for appellant.

*Patrick J. Flanagan,* for appellees.

KENNA, JUDGE:

Gray Miller, as the partially dependent father of Luther W. Miller, was awarded compensation due to the accidental death of the latter on December 31, 1941, while employed at the No. 6 operation of United States Coal & Coke Company near Gary, McDowell County, West Virginia. The Workmen's Compensation Appeal Board affirmed the Commissioner's finding, and the employer prosecutes this appeal, contending that the proof before the Commissioner fails to establish that the death of Luther W. Miller was caused by an accident occurring in the course of and resulting from his employment.

Decedent was employed at the tipple of the No. 6 operation of the employer as what is called a "car dropper", his duties being to release the brakes on the empty coal cars above the tipple on the siding upon which the tipple stood so that they would move by gravity under the tipple. After they were loaded, they were again permitted to move by gravity farther down the siding so that the track under the tipple was cleared for more "empties". The sidetrack upon which the tipple stood extended above and below the tipple and was graded so that when the railroad placed empty cars above the tipple they could move by gravity to and, when loaded, pass the loading point, and could thereafter be held by their brakes on the siding before reaching the main line.

The relative location of the employer's plant units of its operation No. 6, as they appear from the testimony and from a sketch, not drawn to scale, by attorney for claimant, appear to be as follows: The tipple faced the railroad and siding, which run parallel to its face and quite close thereto. Immediately beyond the railroad and running parallel is a creek, and beyond that, a distance of what may be treated as a short city block is the main highway, running parallel to the tipple, the railroad and the creek. On the plat the railroad lies west of the tipple so that the

creek and main road are beyond in the same direction. There is a connecting road leading to employer's No. 6 operation running east at right angles to the main road, located south of the tipple about the same distance as that between the tipple and the main road. It was on the railroad crossing over this road that Luther Miller was injured. The mine office and the bathhouse maintained for the employees evidently are located between a half to three-quarters of a mile from the railroad and the tipple upon this improved minor roadway.

The decedent lived with his father who was employed by the same employer at its No. 3 operation, the record not establishing what, if any, relationship the decedent's living quarters bore to his contract of employment, nor that his method of going to and from work was in any manner related to that contract. See in general annotations in 145 A. L. R. 1033, 97 A. L. R. 555, and other annotations there cited.

On the day of his death the decedent had, as was his custom, come to work in a Ford "pick-up truck" belonging to one of his fellow-workmen, the truck being parked near the company bathhouse between one-half and three-quarters of a mile from Miller's working place at the tipple and sidetrack, and about the same distance from the crossing at which the accident occurred, both being west of the bathhouse. When Miller had finished his day's work, he walked to the bathhouse, bathed and changed, after which he met his companion with the "pick-up truck", got into it with four others and started for home. Miller and one companion rode in the body of the truck, the three others occupying the driver's seat. After they had driven west between a half and three-quarters of a mile, traveling the same roadway used by Miller in reaching the bathhouse, they came to the crossing and started over with a train dangerously close. Miller and his companion in the body of the truck both jumped, Miller over the end gate and his companion over the side. Miller was struck by the locomotive, both legs being severed at or near the hip. He died within a few hours. No other rider of the truck was injured.

This Court has clearly indicated that the primary question of compensability is composed of two distinct elements so that the question of whether the disability occurred from an injury sustained "in the course of" the employment and whether the same injury occurred "as a result of" the same occupation, may be separately determined. Recognizing that there are many cases where the established circumstances render it practically impossible to consider the named elements separately, we nevertheless believe that there are many cases in which that distinction can be clearly drawn.

It might be plausibly contended here that Miller's death was the immediate result of his employment. But for his employment he would not have been on the railroad track at that place and time. Logically, many occurrences, either immediately or remotely, resulted from his employment. But in order to be compensable an injury must also occur in the course of the employment. It does not necessarily follow that an injury which resulted from an employment also occurred during the course of the same employment.

The record does not distinctly show what Miller's working hours were nor the exact length of his working day, but it may be inferred that he was paid by the day and required to report for duty at a certain hour and that his actual work ceased at a specified time. In any event, on the day in question his actual work had ended at least a half hour before his injury. True, he went to the bathhouse afterward and there made use of a plant facility. It is true also that a liberal construction of the compensation law in favor of employees justifies our well-established rule that injuries incurred while making use of plant facilities, immediately connected in point of time with a day's work, are compensable. But Miller had concluded his use of all his employer's property, with the possible single exception of the roadway which led from the bathhouse about three-quarters of a mile to the tipple, the crossing and the main road, which roadway the claimant now contends was company property and a plant facility.

The roadway in question was freely traversed by the general public. There were privately owned homes located upon it, although practically all of the homes so located were owned and controlled by the employer. It was worked and improved soon after Miller's death by the C.C.C., and the situation here not having been shown to fall within either of the provisos of the Federal Act, that organization, under those circumstances, was not permitted to expend its energies in improving private property. See Sec. 584b, Title 16, Fed. Code Ann., 16 U. S. C. A., Sec. 584b. It was an established road before the United States Coal & Coke Company acquired the operation involved here, and we believe that from the proof in this record there is nothing to justify a holding that it was at the time of decedent's death a private road under the control of the employer. It is true that upon its own property at the side of the road the employer had erected several "No Trespassing" signs, but that fact could be urged as a recognition of public use and a caution to strangers to remain on the road. The signs did not bear the usual wording "Private Road" to announce private use.

On the basis of the foregoing we have concluded that under the principle laid down in *Evans* v. *Workmen's Compensation Commissioner,* 124 W. Va. 336, 20 S. E. 2d 172, even conceding that Miller's death did *result from* his employment, the only possibility of also concluding that the injury occurred "in the course of his employment" would rest upon holding that although his day's work was over, and he had bathed, changed and started home, that because the roadway upon which the vehicle that carried Miller was operated was a private roadway, owned by his employer, Miller was killed in the course of his employment. In our opinion the plain preponderance of the evidence is to the effect that the road in question was a public road.

For the most recent case in which this Court has discussed the compensability of injuries sustained other than during actual working hours and upon a public road, see *Carper* v. *Workmen's Compensation Commission,* 121 W. Va. 1, 1 S. E. 2d 165. In the *Carper* case this Court stated

in the course of its discussion that injuries sustained upon public highways while being used by the claimant in common with the general public are not compensable except when justified by an affirmative showing of either special circumstances or contractural provisions. Neither has been shown in this case.

The claimant having failed to show that the main line of the railroad upon which Miller was killed was crossed by a private road connected with the plant of his employer upon which he was travelling, we believe he has failed to establish a fact essential to an award of compensation, even under a most liberal application of the compensation act.

The finding of the Appeal Board and the Compensation Commissioner are therefore reversed, and the case remanded to the Compensation Commissioner.

*Reversed and remanded.*