WATSON, ETC. *v.* GRIMM, EMPLOYER

[No. 208, October Term, 1951.]

*Decided July 15, 1952.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, HENDERSON and MARKELL, JJ.

*William O. Treacy*, with whom were *James J. Treacy* and *Ready and Broadwater* on the brief, for appellant.

*Ernest V. Wachs*, for appellee.

DELAPLAINE, J., delivered the opinion of the Court.

On July 29, 1949, George W. Watson, aged about 60, fell from a garbage truck driven by his employer, William M. Grimm, garbage collector for the City of Hagerstown, and sustained injury which resulted in his death. In April, 1950, his 9-year-old dependent son filed this claim for compensation with the State Industrial Accident Commission. The employer denied that the employee's accidental injury was one "arising out of and in the course of his employment" within the meaning of the Workmen's Compensation Act. Code Supp. 1947, art. 101, sec. 14. On August 14, 1951, the Commission decided that the injury arose out of and in the course of the employment, and ordered the employer to pay compensation to the guardian of the employee's son at the rate of $16.67 per week, beginning July 30, 1949, but not to exceed $7,500, and in addition $300 for funeral expenses. The employer appealed from that award to the Circuit Court for Washington County.

Grimm testified that he paid Watson a salary of $50 per month and also gave him board and lodging on his farm, which was located near Cavetown about five miles from Hagerstown. He also testified that it was his custom to drive a truck each day from his farm to Hagerstown, taking Watson with him and picking up one or two other helpers before proceeding to some section of the city where the garbage was to be collected. On the day of the accident Grimm took Watson on the truck to Hagerstown as usual. After picking up two other helpers, Oscar Kline and a Negro, he drove to the northern section of the city, where the garbage was to be collected that day. The work was completed about 3 p. m. The truck was then about a mile from the center of the city.

Grimm then testified that Watson told him that he did not want to ride back to the farm that afternoon, but wanted to get off the truck downtown. Kline, who lived some distance from the city, wanted to ride on the truck as far as Harristown, where he would catch another truck going toward his home. The Negro, who lived in Hagerstown, wanted to get off downtown. While Grimm was driving the truck downtown, Watson and Kline stood on the running board on one side of the truck while the Negro stood on the running board on the other side. After the truck had traveled a short distance, Watson became dizzy and fell off the running board at the intersection of Potomac Avenue and Laurel Street, and one of the rear wheels ran over his left leg. He was taken to the Washington County Hospital, where his physician found that he had suffered a fracture of the left ankle, contusion of the right thigh and right elbow, and other injuries, and was in a condition of acute surgical shock. He died on the following day.

The Court, after hearing the case without a jury, held that the accidental injury did not arise out of and in the course of the employment, and thereupon entered a judgment reversing the order of the Commission. The claimant has appealed here from that judgment.

The Workmen's Compensation Act imposes liability upon the employer only where there is a causal connection between the accidental injury and the employment, a connection substantially contributory, though it need not be the sole or proximate cause. *Cudahy Packing Co. of Nebraska v. Parramore*, 263 U. S. 418, 44 S. Ct. 153, 68 L. Ed. 366, 30 A. L. R. 532. The words "out of" refer to the origin or cause of the accident, while the words "in the course of" refer to the time and place of the accident and the circumstances under which it occurred. *Spencer v. Chesapeake Paperboard Co.*, 186 Md. 522, 47 A. 2d 385; *Consolidated Engineering Co. v. Feikin*, 188 Md. 420, 52 A. 2d 913. The words "out of the employment" and "in the course of the employment" are not synonymous and, since they are used conjunctively, they must both be satisfied to bring a case within the operation of the Act. *Perdue v. Brittingham*, 186 Md. 393, 402, 47 A. 2d 491.

The first question before us is whether the accidental injury was one arising out of the employment. An injury to an employee arises out of his employment when it results from some obligation, condition or incident of the employment. It was argued by Grimm that Watson's dizzy spell was caused by an idiopathic condition that had no connection with his employment. It is true that the physican testified that the employee told him at the hospital that he did not know what caused him to fall from the truck "except he got dizzy and things got black and he fell." But whatever the condition was that made him faint, there was a causal connection between the injury and the work of garbage collection, as his employer allowed him to ride on the truck, and especially as there was some hazard in riding on the running board. When Grimm was asked whether it was customary for his employees to ride on the running board, he admitted: "Yes, they rode on the running board all the time. In the summer time it is hot. You can hardly stand it. You get warm working, and it feels good out there in the air." An employee's fall

need not be caused by an accident in order that his death resulting from the fall may be compensable under the Workmen's Compensation Act, but it is sufficient if the death is brought about by a hazard of the employment and would not have ensued if it had not been for the employment. It is considered that the fall and the resulting injury constitute the accident within the contemplation of the Act. Where an employee's injury resulting from a fall is contributed to by some factor peculiar to the employment, it arises out of the employment within the meaning of the Act, although the fall has its origin solely in some idiopathy of the employee. *Baltimore Towage & Lighterage Co. v. Shenton,* 175 Md. 30, 199 A. 806; *Varao's Case,* 316 Mass. 363, 55 N. E. 2d 451; *Gonier v. Chase Companies,* 97 Conn. 46, 115 A. 677, 19 A. L. R. 83; *Rockford Hotel Co. v. Industrial Commission,* 300 Ill. 87, 132 N. E. 759, 19 A. L. R. 80; *Connelly v. Samaritan Hospital,* 259 N. Y. 137, 181 N. E. 76; *President and Directors of Georgetown College v. Stone,* 61 App. D. C. 200, 59 F. 2d 875.

We now come to the main question whether the injury was one arising in the course of the employment. This question depends in every case upon the nature of the work and the terms of the contract of employment. The word "employment," as used in the Workmen's Compensation Act, includes not only the actual physical labor but the whole period of time or sphere of activities. So it is generally held that an injury arises "in the course of employment" when it occurs within the period of employment at a place where the employee reasonably may be in the performance of his duties and while he is fulfilling those duties or engaged in doing something incident thereto. *Hartford Accident & Indemnity Co. v. Industrial Accident Commission,* 202 Cal. 688, 262 P. 309, 58 A. L. R. 1392; *Industrial Indemnity Exchange v. Industrial Accident Commission,* 26 Cal. 2d 130, 156 P. 2d 926, 929. In considering the question whether an employee's injury arose in the course of his employment, one or more of the following questions may be considered:

When did the period of employment begin? When did it end? When was its continuity broken? How far did the employee, during the period of employment, place himself outside the employment?

In England the Workmen's Compensation Act of 1897 applied only to employment on, in or about a railroad, mine, quarry or engineering work. It was accordingly held by the English courts that a workmen was not entitled to compensation under that Act unless he was injured while engaged on, in or about the premises where his services were being performed, or where his work required his presence as a part of his services, and during the hours of his employment. Thus the courts in England and the United States adopted the general rule that injuries sustained by employees while going to or returning from their regular place of work do not arise out of and in the course of their employment, as the hazards they encounter on such trips are ordinarily not incidents to the employer's business. *Miller v. United Rys. & Electric Co.,* 161 Md. 404, 157 A. 292; *Lancaster v. Celanese Corporation of America,* 163 Md. 516, 163 A. 209; *Reisinger-Siehler Co. v. Perry,* 165 Md. 191, 167 A. 51; *Nesbitt v. Twin City Forge & Foundry Co.,* 145 Minn. 286, 177 N. W. 131, 10 A. L. R. 165; *Morey v. Battle Creek,* 229 Mich. 650, 202 N. W. 925, 38 A. L. R. 1039; *Marley v. Orval P. Johnson & Co.,* 215 Iowa 151, 244 N. W. 833, 85 A. L. R. 969; *Postal Telegraph Cable Co. v. Industrial Accident Commission,* 1 Cal. 2d 730, 37 P. 2d 441, 96 A. L. R. 460.

The courts soon learned that it was necessary to adopt rules qualifying the general rule. One of these qualifications is that where the employer furnishes the employee free transportation to and from his work as an incident to the employment, an injury sustained by the employee during such transportation arises out of and in the course of his employment. This rule was announced by the Supreme Judicial Court of Massachusetts in 1914 in the leading case of *In re Donovan,* 217 Mass. 76, 104 N. E. 431. The claimant in that case was employed two

miles from his home, and it was his custom to ride with other employees to and from work in a wagon furnished by the employer. The wagon was at the service of the employees at the end of the day's work, and they could ride back in it to the employer's barn if they so desired. The Court held that, since the claimant was injured while riding after the day's work in the wagon furnished by the employer as a part of the contract of employment, his injury arose out of and in the course of his employment.

That decision was followed by the New York Court of Appeals in 1918 in *Littler v. George A. Fuller Co.,* 223 N. Y. 369, 119 N. E. 554. There the claimant was one of the workmen employed in building a house on Long Island about two miles from the nearest railroad station. The employer hired a truck to take the employees to and from their work. On the way to the station at the completion of the day's work, the truck ran into a ditch and the claimant was thrown out and injured. The Court said that, since the truck was provided by the employer to transport the employees to and from work, the day's work began when the claimant entered the truck in the morning and ended when he left it in the evening.

In 1919 this qualification of the "going and coming rule" was accepted by the Maryland Court of Appeals in *Harrison v. Central Construction Corporation,* 135 Md. 170, 108 A. 874. There the employer, engaged in construction work for the United States Government at the Edgewood Arsenal, agreed to furnish the employee, who lived in Baltimore, free transportation on the Pennsylvania Railroad to and from the place of work. This Court, relying on the Massachusetts decision, held that the employment continued during transportation to and from work, and an injury sustained by the employee while attempting to board a train arose out of and in the course of his employment. When the case came up on appeal the second time, the Court said that the injury was compensable regardless of the fact

that the train was not a work train but a regular passenger train. *Central Construction Corporation v. Harrison,* 137 Md. 256, 263, 112 A. 627.

We have stated that where an employer provides free transportation for his employee, the employee is deemed to be on duty during transportation, whether the employer supplies the vehicle or compensates the employee for the use of his own. *Heaps v. Cobb,* 185 Md. 372, 384, 45 A. 2d 73. It is held by the overwhelming weight of authority that where the employer agrees to provide transportation for his employee to and from work, compensability of injury sustained during transportation is in no way dependent upon the method of travel employed. *Swanson v. Latham & Crane,* 92 Conn. 87, 101 A. 492; *Lehigh Navigation Coal Co. v. McGonnell,* 120 N. J. L. 428, 199 A. 906; *City and County of San Francisco v. Industrial Accident Commission,* 61 Cal. App. 2d 248, 142 P. 2d 760; *Burchfield v. Department of Labor and Industries,* 165 Wash. 106, 4 P. 2d 858. As the United States Supreme Court said in *Cardillo v. Liberty Mutual Insurance Co.,* 330 U. S. 469, 67 S. Ct. 801, 809, 91 L. Ed. 1028, where there is an obligation to furnish the transportation, it is irrelevant whether the employer performs the obligation by supplying its own vehicle, hiring the vehicle of an independent contractor, making arrangements with a common carrier, reimbursing employees for the use of their own vehicles, or reimbursing employees for the costs of transportation by any means they desire to use.

The employee in this case was allowed to live in a small house on the employer's farm as a part of the contract of employment, and it was customary for him to ride to Hagerstown in the morning on an empty truck, and, after the truck was loaded, to ride all or part of the way home. The fact that for three years the employee lived on the employer's farm three miles away from the city, and the fact that the place where he finished work was often more than a mile from the center of the city, considered together with the other

facts and circumstances in the case, warranted the finding of the Commission that the employment continued from the time he got on the truck until he got off.

It is generally accepted that the agreement of an employer to provide transportation for his employee need not be express but may be implied from the nature, conditions and circumstances of the employment and the custom of the employer to provide transportation. In *Voehl v. Indemnity Insurance Co. of North America*, 288 U. S. 162, 53 S. Ct. 380, 383, 77 L. Ed. 676, 87 A. L. R. 245, Chief Justice Hughes, delivering the opinion of the court, said: "While service on regular hours at a stated place generally begins at that place, there is always room for agreement by which the service may be taken to begin earlier or elsewhere. Service in extra hours or on special errands has an element of distinction which the employer may recognize by agreeing that such service shall commence when the employee leaves his home on the duty assigned to him and shall continue until his return. And agreement to that effect may be either express or be shown by the course of business. In such case the hazards of the journey may properly be regarded as hazards of the service, and hence within the purview of the Compensation Act."

In this case Grimm testified that Watson told him he wanted to ride downtown "to attend to some business in the business section." The trial judge stated that the route by way of the downtown business section was not the shortest route to the farm, that Watson was bound upon "a personal mission of his own," and that Grimm was taking Watson downtown merely as "a personal favor." We concede that where an employer, without any agreement as to transportation, conveys his employee to or from his place of work merely as an act of courtesy, an accident occurring during the journey is not covered by the Workmen's Compensation Act. *Schultz v. Beaver Products Co.*, 223 App. Div. 582, 229 N. Y. S. 134, affirmed, 250 N. Y. 565, 166 N. E. 326; *Gruber v. Mercy*, 7 N. J. Misc. 241, 145 A.

106; *Walker v. Hyde,* 43 Idaho 625, 253 P. 1104. But in the present case Grimm admitted that, when the garbage truck was loaded, it was his custom to drive by way of the business section whenever Watson did not want to ride back to the farm on the truck. He also admitted that he brought Watson downtown as often as two or three times a week. Moreover, on the day of the accident there were two other employees on the truck who wanted to ride downtown.

In order to bring a case within the exception to the "going and coming rule," it is not necessary to show that service to the employer was the sole cause of the trip, but it must at least have been a concurrent cause. As the Court of Appeals of New York said in *Marks' Dependents v. Gray,* 251 N. Y. 90, 167 N. E. 181, 183, the inference must be permissible that the trip would have been made even though the private errand had been canceled. We adopt the test as stated by Chief Judge Cardozo: "If the work of the employee creates the necessity for travel, he is in the course of his employment, though he is serving at the same time some purpose of his own.

We acknowledge, of course, that if the employee himself is driving the vehicle and the employer has not given consent to a deviation from the normal route of transportation, then an injury sustained during the deviation may not have occurred in the course of employment. For instance, in *Mountain v. Industrial Accident Commission of California,* 92 Cal. App. 176, 267 P. 913, where an employer sent his employee in an automobile to get a suitcase for him, and the employee, instead of bringing it in a direct course to the place appointed for its delivery, deviated by going seven blocks in an opposite direction to get a package of cigarettes, and was injured when he was at least four blocks from any direct course between the place where he got the suitcase and the place where it was to have been delivered, the Court ruled that the injury did not arise in the course of the employment.

On the other hand, the tendency of the modern decisions has been to give to the Workmen's Compensation Act a construction as liberal in favor of the employees as the provisions of the Act will permit in order to effectuate its benevolent purposes. *Bethlehem-Fairfield Shipyard v. Rosenthal,* 185 Md. 416, 425, 45 A. 2d 79. Thus it has been generally held that where an employer, who provides transportation for his employee to or from his work, permits a slight deviation from the normal route of transportation, an injury sustained by the employee during the deviation arises in the course of the employment. In *Railway Express Agency v. Lewis,* 156 Va. 800, 159 S. E. 188, 76 A. L. R. 350, where a truck driver deviated from a direct route with the consent of his employer to go to his home on a personal errand, and, after completing the errand, he started to the place of delivery designated by his employer and was killed before reaching his destination, the Court held that, although he was returning from a personal errand, the injury was one arising out of and in the course of his employment in view of the fact that the consent of the employer had been obtained.

Where the driver of the vehicle is furnished by the employer, the employee's case is stronger because then the employer's agent has control over the acts and movements of the employee. While the presence or absence of control by the employer over acts and movements of the employee during transportation to or from work is not decisive, it is a factor to be considered in determining whether an injury during the transportation arose out of and in the course of employment. *Cardillo v. Liberty Mutual Insurance Co.,* 330 U. S. 469, 67 S. Ct. 801, 808, 91 L. Ed. 1028.

In citing these decisions we are not intimating that the employee in this case deviated from the course of his employment. Actually he had not yet left his employment for the day. This is a case where the employer himself chose to take a longer route for the convenience of three employees, as he had done many times before,

rather than the "short cut" to his farm. But we emphasize that the employer himself was driving the garbage truck and had personal control over the acts and movements of the employees. Even if the route was not the shortest to the farm, it was a route which the employer had taken on many previous occasions, and he was not transporting the employees merely as an act of courtesy.

These reasons lead to the inescapable conclusion that the evidence supports the finding of the Commission that the employee's accidental injury arose out of and in the course of his employment. We must therefore reverse the judgment of the Court below and remand the case for the entry of a judgment affirming the order of the Commission.

*Judgment reversed and case remanded,
with costs.*