MARYLAND PAPER PRODUCTS CO. ET AL. *v.* JUDSON

JUDSON *v.* MARYLAND PAPER PRODUCTS CO. ET AL.

[No. 131, September Term, 1957.]

(Two Appeals In One Record)

*Decided March 3, 1958.*

580

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ.

*J. Kemp Bartlett, III,* with whom were *Bartlett, Poe & Claggett* on the brief, for appellants and cross-appellees.

*Harry S. Swartzwelder, Jr.,* with whom were *Paul Berman, Theodore B. Berman* and *Sigmund Levin* on the brief, for appellee and cross-appellant.

BRUNE, C. J., delivered the opinion of the Court.

This case presents cross-appeals by Maryland Paper Products Company, the Employer, United States Fidelity & Guaranty Company, the Insurer, and by Lillie L. Judson, the Claimant, widow of Arthur C. Judson, the Employee, from a judgment of the Superior Court of Baltimore City, which affirmed a decision of the State Industrial Accident Commission finding that Arthur C. Judson, deceased, had sustained an accidental injury arising out of and in the course of his employment and making awards under the Workmen's Compensation Act in accordance with that finding. This judgment was based upon a verdict of the jury which answered "Yes" to the sole issue, which was whether or not the Employee had sustained an accidental injury on August 13, 1955, arising out of and in the course of his employment. The Claimant's cross-appeal is based upon the exclusion of evidence presenting a ground of recovery which was not submitted to the jury, and it was taken to protect her right to assert that ground of recovery in case of a decision adverse to her on the Employer's and Insurer's appeal.

There are two principal questions. The first is whether or not, in the circumstances of this case, under the so-called "proximity rule" the Employee was covered by the Work-

men's Compensation Act when, on his way to work, he attempted to cross from a parking space on the opposite side of a public street to the Employer's factory. The second is whether or not evidence of the Employee's expressed intention to pick up a piece of equipment for the Employer's use on his way to his place of employment should have been admitted. The Employer's and Insurer's appeal asserts that the answer to the first question should be "no". The Claimant's cross-appeal asserts that the answer to the second question should be "yes".

The facts of the case pertinent to the proximity rule question are uncontroverted and substantially as follows: The decedent, Arthur C. Judson, at the time of the accident had been employed by the Employer for over nineteen years. His regular working hours began at 6:30 A.M. and ended at 5:30 P.M., except Saturdays when he left at 3:30 P.M. His duties, which he performed within the Employer's factory, consisted of the maintenance, construction and repair of machinery. The premises of the Employer (and of apparently subsidiary or affiliated corporations) occupy all of the western side of the 1100 block of South Eutaw Street, in the City of Baltimore, and most of that side of the 1200 block as well. The Employer's factory building in which the decedent was employed is in the 1100 block. That block is bounded on the north by Cross Street and on the south by West Street. The Camden Station yard of the Baltimore & Ohio Railroad lies on the east side of the 1100 and 1200 blocks of South Eutaw Street. A railroad track used by the Employer for shipping its products runs down the center of South Eutaw Street. Access to any part of the factory building may be gained either by an entrance on China Street, at the rear of the building, or by an entrance on South Eutaw Street. The use of either entrance is discretionary with the employees and is not restricted by any company rule.

On August 13, 1955, the decedent left his home in Pasadena, Anne Arundel County, Maryland, at 5:45 A.M., his usual departure time, to drive to work in his pick-up truck. At this particular time the center of "Hurricane Connie" was passing slightly to the west of Baltimore and the weather

was very bad. The decedent arrived at the 1100 block South Eutaw Street about 7:40 A.M., approximately 70 minutes late for work. There was a box car standing on the railroad track in the middle of South Eutaw Street. The decedent pulled his truck off a little to the north and east of this box car and parked it diagonally on the east side of the street, opposite the factory, between yellow lines for parking spaces which were painted on the pavement. As the decedent was crossing the street on his way towards the entrance to the factory he was struck by an automobile which was being driven in a southerly direction by one Charles Thomas Dobry, Jr. The point of impact was 20 feet west of the east curb of the street and 6 feet east of the center of the street. The decedent died of injuries received in this accident a little more than two months later, on October 16, 1955.

Much of the argument concerns the control, or lack thereof, of the Employer over the parking space across the street from its factory. We shall therefore go into the evidence on that subject in some detail.

The testimony suggests that there is some close relationship between the Employer and certain other corporations occupying the building in which the Employer's factory is located and a building or buildings on the west side of the 1200 block of South Eutaw Street, but just what the relationship is (whether subsidiary, parent or affiliate) is not clear. In 1953 a representative of one or more of these related corporations, apparently acting on behalf of all, asked the Department of Traffic Engineering of Baltimore City to permit angle parking, instead of parallel parking, on the east side of the 1100 and 1200 blocks of South Eutaw Street and on Cross Street and West Street. Such permission was granted by a letter dated October 23, 1953, directed to Maryland Cup Company, one of the related corporations, as to the south side of Cross Street and the north side of West Street, upon which the Employer's factory abuts. The permission for angle parking was general as to the south side of Cross Street from Eutaw Street to the first alley west thereof, but it was restricted on the north side of West Street when shipping or receiving was being carried on for a ma-

chine shop located south of West Street in the 1200 block of South Eutaw Street. On the east side of South Eutaw Street angle parking was permitted for approximately the entire length of the 1100 and 1200 blocks, except for two spaces, each of thirty feet and one in each block, opposite shipping entrances in the factory buildings on the west side, where only parallel parking was allowed. Maryland Cup Company was authorized to do the painting of the parking spaces under the direction of the City Department of Traffic Engineering, and the painting was so done. The letter of October 23, 1953, stated that "this permit shall be in effect until revoked or suspended by the Director of Traffic and must be kept on the premises and open for inspection during all business hours."

The only portion of the several areas in which angle parking was to be permitted where it seems to have been contemplated that the Employer (or a related company) should exercise control over parking was on West Street opposite the machine shop shipping entrance. The Employer's factory abuts on that space, but that area is not involved in this case.

The primary objective of the Maryland Cup Company in seeking these parking arrangements was said by one of its officers to have been the convenience of "our organization", including its employees. The Assistant Director of the Department of Traffic Engineering testified that the conversation was primarily concerned with improving traffic conditions in the immediate area. He said there had been a good deal of double parking. He also stated positively what seems clear from the letter of October 23rd, that permission for angle parking could be revoked by the Director of the Department at any time.

Facts pertaining to the question of evidence will be taken up when we come to that question.

The Employer and Insurer submitted prayers for a directed verdict, which were denied. This ruling raises the first of the principal questions—whether or not the "proximity rule" is applicable in the circumstances of this case.

The general rule with respect to injuries received by an employee while in the street in front of the employer's prem-

ises when going to or coming from work is set forth in an annotation in 85 *A. L. R.* 97-98 which states that "\* \* \* The compensation acts have been very generally held not to authorize an award in case of an injury or death from a peril which is common to all mankind, or to which the public at large is exposed. \* \* \*. And they do not as a general rule cover injuries received while going to or from work on public streets, where the employee has not reached, or has left, the employer's premises." Cf. *Wiles v. American Oil Co.,* 105 Pa. Super. 282, 161 A. 467, and *Miller v. State Compensation Commissioner,* 126 W. Va. 78, 27 S. E. 2d 586. *Watson v. Grimm,* 200 Md. 461, 467, 90 A. 2d 180.

In Maryland several modifications of the general rule have taken place, but this seems to be the first in which the proximity rule has been invoked. In *Harrison v. Central Construction Co.,* 135 Md. 170, 180, 108 A. 874, an employee was injured on his way to work while attempting to board a train on which transportation was provided by the employer, without expense to the employee. The court held the accident was one arising out of and in the course of the injured worker's employment. This conclusion was not altered on the second appeal when it was shown that the train in question was a regular passenger train operated by a common carrier, and not a special work train. *Central Construction Co. v. Harrison,* 137 Md. 256, 112 A. 627. Cf. *Watson v. Grimm, supra; Congressional Country Club v. B. & O. R. R.,* 194 Md. 533, 71 A. 2d 696.

Another modification of the general rule is found in the case of *Western-Dodson Co. v. Carl,* 156 Md. 535, 144 A. 708 (1929) in which it was held that a salesman who, after making calls on his customers, was injured while driving home to make business telephone calls, was acting within the course of his employment when he was injured. The court cited and followed *McNicol's Case,* 215 Mass. 497, 102 N. E. 697.

Cases dealing with the proximity rule and other modifications of the usual "going and coming" rule seems generally to recognize that each case must be determined upon its own facts. See *Cudahy Packing Co. v. Parramore,* 263 U. S.

418, which is said to be the first case establishing the proximity rule; *Watson v. Grimm, supra,* in which this Court spoke of "the nature of the work and the terms of the contract of employment" and went on to say: "The word 'employment,' as used in the Workmen's Compensation Act, includes not only the actual physical labor but the whole period of time or sphere of activities. So it is generally held that an injury arises 'in the course of employment' when it occurs within the period of employment at a place where the employee reasonably may be in the performance of his duties and while he is fulfilling those duties or engaged in doing something incident thereto." (200 Md. at 466.)

Some fairly well defined exceptions to or modifications of the "going and coming" rule have developed, as in the *Harrison* and *Watson* cases, *supra,* where the employer furnishes transportation, or in *Reisinger-Siehler Co. v. Perry,* 165 Md. 191, 167 A. 51, where an employee on call after regular hours was injured while on his way home after performing an extra, after-hours duty. See also *Gallman v. Springs Mills,* 201 S. C. 257, 22 S. E. 2d 715; *Schneider, Workmen's Compensation* (1951), Vol. 8, Sec. 1710.

*Schneider, op. cit.,* Section 1724, states the proximity rule in this way: "The proximity rule exception to the general going and coming rule is that an employee is generally considered to be in the course of his employment while coming to or going from his work, when, though off the actual premises of his employer, he is still in close proximity thereto, and is proceeding diligently at an appropriate time, by reasonable means, over the natural, practical, customary, convenient and recognized way of ingress or egress, either on land under the control of the employer, or on adjacent property with the express or implied consent of the employer."

Two of the cases relied upon by the Claimant emphasize ownership or control by the employer of the premises where the employee was injured on his way to or from work. *Pacific Indemnity Co. v. Industrial Accident Comm.,* 28 Cal. 2d 329, 170 P. 2d 18; *Harrigan v. N. Y. C. Transit Authority,* 153 N. Y. S. 2d 416.

In *Freire v. Matson Navigation Co.,* 19 Cal. 2d 8, 118 P.

2d 809, the employee's injuries occurred when, while alighting from a taxicab stopped on a public bulkhead adjacent to the pier where his ship was moored, the taxicab was struck by a vehicle belonging to the defendant. The employer utilized the pier area adjacent to the bulkhead although the area was managed by the state board of Harbor Commissioners. The bulkhead adjoining the premises of the employer was used primarily for the purpose of the company to handle cargo, and as a thoroughfare and parking place for those having business with the employer. We feel this case is clearly distinguishable from the case at bar since South Eutaw Street is a public street subject to passing traffic while in the *Freire* case the pier end was used almost exclusively by the employer for its own purposes.

*Spellman v. Industrial Comm. of Ohio,* 73 Ohio App. 369, 51 N. E. 2d 414, on its facts resembles *Cudahy Packing Co. v. Parramore,* 263 U. S. 418, *supra.* In each case the employee was approaching his place of employment in an automobile by the only practicable means, which was a public road leading only to the employer's plant. The route in each case led across at least one railroad track and the automobile in which the employee was riding was struck by a freight car or a locomotive. An award under the Workmen's Compensation Act was upheld in each case.

*Bountiful Brick Co. v. Giles,* 276 U. S. 154, was similar in several respects to *Cudahy Packing Co. v. Parramore,* above cited. Both cases arose under the Utah Workmen's Compensation Act and both went to the Supreme Court of the United States from the Supreme Court of Utah, on contentions that the awards violated the Fourteenth Amendment. In the *Bountiful Brick* case, the only means of access to the employer's plant was across a railway line. The employee was struck and killed by a train while on his way to work. The accident occurred at a place used as a crossing by employees of the Brick Company with the knowledge of that Company. It was not a part of a public road and there were other crossing points and means of entrance to the Brick Company's plant. At 276 U. S. 159, the Supreme Court said: "The present case, though it comes nearer the

border line, falls within the principle of the *Parramore* case. Since the only way of access to its brickyard from the east was across the railway tracks, the company necessarily contemplated the crossing of them by its employees. No definite line of travel being indicated by the company or followed by the employees, who, with the company's full knowledge and acquiescence, habitually crossed wherever they saw fit, it results that, however the crossing was made, the risk thereby incurred was reasonably incidental to the employment and became annexed as an implied term thereof."

In *Guient v. Mathieson Chemical Corp.* (La. App.), 41 So. 2d 493, an award in favor of an employee was sustained where the employee, on his way to work, was injured while crossing a public highway from a bus stop to the employer's plant. The court relied upon *Cudahy Packing Co. v. Parramore, supra,* and stated that one of two "very important elements * * * to be taken into consideration" was "the proximity of the public passageway and its necessity and convenience for the conduct of the employer's business."

The *Guient* case seems irreconcilable in result with *Lancaster v. Celanese Corp.,* 163 Md. 516, 163 A. 209. In the latter case an employee of the Celanese Corporation had finished his work for the day and walked out through the plant's gate to a public highway. He intended to cross the road and board a bus on the other side to go to his home. He walked into a passing automobile, put his head through the window and got his throat so severely cut that he died a few minutes after being taken to a hospital. The Commission denied compensation. On appeal, the Circuit Court directed the jury to answer "No" on the issue whether the employee's death was the result of an accidental injury which arose out of and in the course of his employment. This Court affirmed the judgment entered by the trial court. Judge Sloan, writing the opinion of this Court, said (163 Md. 517): "The evidence is that the conveyance which the employee was about to board, and in which he habitually rode to and from work, was that of a common carrier, not provided by the employer * * *. The day's work was done, and the employee assumed the accustomed task of

going home." There was no discussion of the proximity rule, and it was not urged in the appellant's brief. If it had been raised, quite possibly the present case would not be before us. Our consideration of the question has been greatly aided by the thorough briefs and arguments of counsel for both sides.

We think that the evidence is not sufficient to establish control over the area where the accident occurred so as to bring this case within the rule of such cases as the *Pacific Indemnity, Freire* or *Harrigan* cases above cited. The parking arrangements worked out between the Employer and the City Department of Traffic Engineering did not convert the east side of Eutaw Street opposite the Employer's plant into a parking lot for its employees or give the Employer any control over who might or who might not use the parking spaces. Control over parking in this area was clearly retained by the City through its power to terminate the arrangement at any time. Nor is the fact that a box car was standing on the railroad track in front of the Employer's plant for its use in shipping its products enough to establish practical control over the street east of the box car, (even if it could be said to have had such an effect on the west side between the factory and the box car). Indeed, one reason for the angle parking arrangement seems to have been to prevent double parking and so to keep the east side open for traffic. The present case differs from the *Freire* case in two important respects: first, the practical control of the area which existed in the *Freire* case is not present here; and second, the employee here was not injured by a vehicle owned by the employer and operated in the area in question.

The present case differs still more from what may be called the "dangerous approach" cases, such as the *Parramore* case. Crossing streets is unfortunately often hazardous but it is a risk which has to be incurred by nearly everyone going back and forth between his home and his place of employment. The Employee in the present case could have selected any place to cross the street that he might choose, and he was exposed to no unusual hazard in crossing. What we regard as the decisive language of the *Parramore* case simply does

not fit this case. That language (263 U. S. 426) is as follows: "Here the location of the plant was at a place so situated as to make the customary and only practicable way of immediate ingress and egress one of hazard. Parramore could not, at the point of the accident, select his way. He had no other choice than to go over the railway tracks in order to get to his work; and he was in effect invited by his employer to do so. And this he was obliged to do regularly and continuously as a necessary concomitant of his employment, resulting in a degree of exposure to the common risk beyond that to which the general public was subjected."

Having reached the conclusion that the Employer did not have control over the parking spaces here involved, if we were now to hold the proximity rule applicable, we should have to extend the *Guient* case somewhat as, but considerably more than, the *Bountiful Brick Co.* case extended the *Parramore* case; and we should also convert the proximity exception to the going and coming rule into the general rule for any street upon which a place of employment might front, and overrule the *Lancaster* case at least as to its result. We think that this would be an unwarranted extension of the proximity rule and that it should not be applied upon the facts of the instant case.

The Claimant urges that she is entitled to recover under Section 68 (6) of Article 101 of the Code (1951 Ed.), which (as amended by Ch. 289 of the Acts of 1951) allows compensation for injuries inflicted upon an employee by a third party while the employee is in the course of his employment, without prescribing that the injury also arises out of his employment. We do not think that this argument aids the Claimant insofar as the proximity rule is concerned, because we find that, under that rule and on the facts above stated, the Employee was not acting in the course of his employment in crossing Eutaw Street.

If the second question were not present in this case, as the facts pertaining to the going and coming rule are not in dispute, we should reverse the judgment without a new trial, since on that phase of the case the original appellants would have been entitled to a directed verdict. The direction of a

verdict on uncontroverted facts was approved in the *Harrison* and *Lancaster* cases, above cited.

However, the Claimant's cross-appeal raises the question of whether the court erred in its refusal to allow her (the deceased's wife) to testify to a conversation she had with her husband before he left for work on the morning of the accident. From the proffer made at the trial, it appears that the husband told his wife that it was necessary to go to work that morning because he had to stop off on the way to pick up a gear wheel to be used in one of the Maryland Paper Product's machines. We think that the court erred in refusing to admit this testimony.

In VI *Wigmore*, § 1725, the author lists "Statements of a Design or Plan" as an exception to the hearsay rule. On pages 79-80 Wigmore states: "It has already been seen * * * that the existence of a *design* or *plan to do* a specific act is relevant to show that the act was probably done as planned. The design or plan, being thus in its turn a fact to be proved, may be evidenced circumstantially by the person's conduct * * * . But, as a condition of mind, the plan or design may also, it is clear, be evidenced under the present Exception by the *person's own statements* as to its existence. The only limitations as to the use of such statements (assuming the fact of the design to be relevant) are those suggested by the general principle of this Exception, namely the statements must be of a *present existing state of mind*, and must appear to have been made in a natural manner and not under circumstances of suspicion." Cf. *In re Coleman*, 53 Idaho 339, 23 P. 2d 1115. Accord, *People v. Conklin*, 175 N. Y. 333, 67 N. E. 624.

*McCormick* on *Evidence*, Sec. 270, page 572, makes a similar statement: "* * * [T]he modern cases and texts leave no room to doubt the statement that the accepted principle today is that evidence of declarations of a plan, design or intention presently entertained by the declarant is, subject to the usual limitations as to remoteness in time and apparent sincerity common to all declarations of mental state, admissible when offered as evidence that the design was carried out by acts or omissions of the declarant."

We approve the rule stated by Wigmore and McCormick. We may add that in this state, in *B. & O. R. R. Co. v. State, Use of Chambers,* 81 Md. 371, 32 A. 201, a statement as to intention was admitted, though its admission was on the basis that the statement in question was a part of the *res gestae.*

The evidence of the deceased's statements to his wife before leaving for work in the morning, plus the testimony of the policeman and the co-worker concerning statements made to them by the deceased indicating that he had the gear wheel with him at the time of the accident, coupled with the circumstantial evidence that the deceased was one hour and ten minutes late for work, we think constitutes sufficient evidence to require the case to be submitted to the jury on the issue of whether the deceased was fatally injured while acting in the course of his employment in delivering a gear wheel to his Employer's place of business.

> *Judgment reversed and case remanded for a new trial, with costs to be equally divided.*