JOSEPH CHERNICK'S (dependents') CASE.

Bristol. January 5, 1934. — March 29, 1934.

Present: RUGG, C.J., CROSBY, PIERCE, WAIT, & FIELD, JJ.

*Workmen's Compensation Act*, Injuries to which act applies. *Evidence*, Private conversation of husband and wife. *Husband and Wife.*

It was improper, at a hearing by a single member of the Industrial Accident Board in proceedings under the workmen's compensation act, to permit the widow of the employee to state in testimony what her husband in a private conversation had told her of a telephone conversation which he had had with a third person, and also that in the same conversation he had given her a certain instruction: the testimony was obnoxious to the first exception stated in G. L. (Ter. Ed.) c. 233, § 20.

In proceedings under the workmen's compensation act, the following facts appeared: the employer was engaged in Fall River in the business of selling furniture to be paid for by instalments. The employee was a collector of instalments, who used an automobile in his work, and it was his duty to receive orders daily at the employer's office

respecting work to be done and to report later the same day at the office; there were no particular hours of employment, but the employee had a certain amount of work to do each day which must be done. In the evening preceding the injury to the employee, he had gone to his home with some of his day's work not done and without reporting at the employer's office and without returning to a customer some money due in making change. His employer then told him on the telephone to leave earlier the next morning and to take care of his unfinished work and the return of change to the customer. The next morning he left his residence somewhat earlier than usual. While on the route which would take him to the employer's office, and before coming to a street which branched therefrom to the house of the customer whose change he was directed to return, he was injured in a collision. *Held,* that

(1) In the circumstances, the employee could not be considered to have been actively engaged in the business of his employer when he was injured;

(2) The claim should be dismissed.

CERTIFICATION to the Superior Court under the provisions of the workmen's compensation act of a decision by the Industrial Accident Board awarding compensation.

Material facts and evidence are described in the opinion. In the Superior Court, by order of *Hanify,* J., a final decree was entered awarding compensation. The insurer appealed.

*R. A. Bogle,* for the insurer.

*S. H. Workman* of Rhode Island, for the claimants.

PIERCE, J. It is admitted, or not denied by the insurer, that the injury to Joseph Chernick from which he died occurred February 4, 1932, between 7:30 A.M. and 8 A.M.; that the place of injury was Seekonk, Massachusetts; that the cause of the injury was a collision between an automobile driven by Chernick and two other automobiles; that Chernick was an employee of The A. L. Nichols Company with places of business at Fall River, Massachusetts, and Providence, Rhode Island; that the employee is survived by his widow, Faye K. Chernick, the claimant, and one child, Ernest Kramer Chernick, born August 13, 1931; and that they were dependent upon the employee at the time of his injury and death. It was further admitted, or not denied, that the deceased lived in Providence, and was a collector for The A. L. Nichols Company, an instalment furniture house in Fall River.

A witness, Leon Simons, who lived in Providence, called by the claimant, testified that he had control of the collections and of the activities of the deceased as collector; that the average route of collectors consists of about one hundred fifty calls or accounts; that it is a matter of indifference to the company if a man can do the work from seven in the morning until noon time or goes out at ten in the morning and finishes at six at night "as long as he brings them the desired result." He further testified as follows: The route of the collector "is a collection of cards" and the collector is supposed to call on the persons named on the cards at some time during the day they are assigned to him and report to the witness. The collectors turn in their routes (cards) at night with the money collected on them; if the "route" is not finished the collector is to turn in the money collected and make his back calls later; there were no particular working hours for a collector; he had a certain amount of work to do each day which must be done. On February 3, 1932, the route of Chernick consisted of Somerset, Swansea and Seekonk, which are located in Massachusetts between Fall River and Providence. Chernick lived in Providence and worked in the Fall River office. On the night of February 3, 1932, he did not make a report at the store in Fall River and the witness waited for him until seven o'clock and then went to his home in Providence. At about eight o'clock he called Chernick by telephone and asked him why he did not come in that night. Chernick replied that he did not finish his work, that he had a lot of back calls to make and he could not finish them, and that he would be in in the morning. On the afternoon of February 3, 1932, a customer told the witness over the telephone that she had given Chernick a check in payment, that he did not have enough money to give her her change and promised to come back that afternoon; that she was a little worried about it and called to find out whether it was all right to give him the check or not. The witness spoke to Chernick about this conversation with the customer (one Mrs. De Sousa) — one of the principal reasons why he called Chernick was to find out why he did not return that money — and told him "positively to go there the first thing

in the morning and do it." He asked Chernick why he did not pay the balance due the woman, and the deceased said he did not have time to get back that afternoon, and he told him to leave earlier in the morning and take care of these duties, i.e., his back calls and the payment of the change to Mrs. De Sousa.

It appeared from the testimony of the claimant that she overheard her husband's talk with the witness Simons and heard him say, among other things, that "he would start early in the morning to give the change." Against the objection and exceptions of the insurer the claimant was permitted to testify, in reply to a question, as to what her husband told her of his conversation with Simons; her answer was that her husband "told her Mr. Simons wanted to know why he didn't bring the cards and the cash in and why he didn't bring the change to a customer and [told him] to make sure that he leave tomorrow morning early"; she further stated that "her husband told . . . [her] to wake him up early in the morning he had to leave earlier than usual." This testimony clearly was a private conversation between husband and wife, and was obnoxious to the first exception stated in G. L. (Ter. Ed.) c. 233, § 20. It follows that the insurer's exception thereto, if material to the issue involved, must be sustained.

The claimant testified that her husband ordinarily left for work about eight o'clock; that on the morning of February 4, 1932, he left about 7:30 or quarter of eight; that it is about seventeen or eighteen miles from her residence to the center of Fall River; that her husband was supposed to be at work at 8:30 o'clock; and that he was having his own car repaired the morning of the accident and was using a dealer's car. The witness Simons testified that Chernick did not have route slips for the day on which he was killed; that he would have to report to the Fall River office for them.

As above stated it was in evidence and not disputed that Chernick left his home a little earlier than usual, in an automobile hired for the occasion by him, and was involved in an accident near "Charlie's Diner" in Seekonk. This place is located approximately at the junction of the Fall River-

Providence road and the old road to Providence. At the time of the accident Chernick had not reached the place, if there were any place, where he would leave the main road from Providence to Fall River. The De Sousas lived on Lees River Avenue, Swansea, which branches out of the main road from Providence to Fall River. It is plain that Chernick at the time of the accident was on his way to work on a definite route which he was accustomed to use in going to the office of the company at Fall River, and if he intended that morning to depart from the usual course and proceed to the house of Mrs. De Sousa he had not reached the point of departure at the time of the accident. It is now elementary that the compensation act does not extend to cover employees going to and coming from their work, or when, as here, they do not have work assigned to be performed elsewhere until instructed at the office. *McNicol's Case,* 215 Mass. 497, 498. *Rourke's Case,* 237 Mass. 360. We think Chernick cannot be considered actively to be engaged in the business of his employer when he was injured riding to the employer's place of business in Fall River to receive orders for his day's work, and incidentally to pay over his collections. Nor do we think the order to leave "earlier in the morning and take care of these [unperformed] duties" created a special employment which began when Chernick left his home and, if there had been no accident, would have continued until Chernick reached the office of his employer in Fall River. This case involves not the question of street risks, but only the question, Was Chernick actively engaged in his employer's business while on his way to his daily work and before he had reached any place where he had uncompleted work to be performed? This case is distinguishable from *Higgins's Case,* 284 Mass. 345, and is governed by *Fumiciello's Case,* 219 Mass. 488, *Rourke's Case,* 237 Mass. 360, *Bell's Case,* 238 Mass. 46, and *Savage's Case,* 257 Mass. 30.

The decree in the opinion of a majority of the court must be reversed and judgment entered for the insurer.

*So ordered.*