### ROBERT H. GWALTNEY'S CASE.

Suffolk.    December 5, 1968. — February 5, 1969.

Present: WILKINS, C.J., CUTTER, KIRK, SPIEGEL, & REARDON, JJ.

*Workmen's Compensation Act*, Injuries to which act applies, Street risk.

A finding that an injury to an account supervisor employed by an investment company arose out of and in the course of his employment within the Workmen's Compensation Act, G. L. c. 152, or resulted from a risk of the street within § 26 was not warranted by evidence that the injury occurred when the employee slipped on ice and fell while walking toward his office in a city about 9:00 A.M. after driving from his home and parking his automobile in accordance with his routine, even though at the time of injury he expected to use his automobile later in the day to visit clients outside of the city and the company would reimburse him for travel expenses.

CERTIFICATION to the Superior Court of a decision by the Industrial Accident Board under the Workmen's Compensation Act.

The case was heard by *Collins*, J.

*Philander S. Ratzkoff* for the insurer.

*Ralph C. Copeland* (*Walter W. Baldwin* with him) for the employee.

KIRK, J.    This is an appeal by the insurer [1] from a decree of the Superior Court awarding compensation to the employee, Gwaltney.    The reviewing board affirmed and adopted the findings and decision of the single member in favor of the employee.

We summarize the findings: Gwaltney worked for the David L. Babson Company, Inc. (Babson), as an account supervisor at an annual salary.    He was an investment counsellor to assigned accounts.    About twenty-five per cent of his time was spent soliciting new business for Babson.    "[W]hen it was necessary for him to use his automo-

[1] The Employers' Fire Insurance Company.

bile for business, the company paid him eight cents per
mile plus tolls and parking; . . . on February 25, 1965 he
arrived in Boston at about 9:00 A.M. from his home in Bel-
mont; . . . parked his car in the Custom House Garage,
which was his usual practice, and while walking toward his
office he slipped on ice, fell and sustained an injury to his
left leg and hip . . . . [O]n February 25, 1965 he had two
out of town appointments lined up for the office."

The findings of the single member which by adoption be-
came those of the board continued: "I find that . . . this
employee did sustain . . . [an injury] which arose out of
and in the course of his employment. I further find that
from the time the employee left his home in Belmont, due
to the fact that he was scheduled to use his car to check on
two clients that day, I find that his employment commenced
from the time he left his home in Belmont on that morning
because of the fact that he had to take his car into work
and further for the reason that it would have been necessary
for him to use his car to check on the two out-of-town ap-
pointments scheduled that day for company business."

We apply the familiar standard of review. *Chapman's
Case*, 321 Mass. 705, 707. *Look's Case*, 345 Mass. 112, 114.
*Brigham's Case*, 348 Mass. 140, 141.

The insurer's contention is that as matter of law Gwalt-
ney's injury cannot be found to have arisen out of and in the
course of his employment. There is merit to this conten-
tion and we think it must prevail. Although the specific
findings of the board are couched in language which might
support the conclusion that the injury arose out of and in
the course of Gwaltney's employment, our examination of
Gwaltney's testimony shows that the conclusion is without
evidential support and cannot stand. *Smith's Case*, 326
Mass. 160, 161–162. Gwaltney testified that he normally
drove his car from his home in Belmont to get to work in
Boston and regularly parked it at the Custom Motor Mart
garage in Boston, and walked across the street to his office,
a distance of about 125 feet, where he customarily arrived
at 9 A.M. He followed this routine on the morning of Febru-

ary 25, 1965, up to the time of his injury which took place when he was approximately seventy-five feet from his office building.

"It is now elementary that the compensation act does not extend to cover employees going to and coming from their work." *Chernick's Case*, 286 Mass. 168, 172. *Smith's Case*, 326 Mass. 160, 162. *Collier's Case*, 331 Mass. 374, 375-376. The rule applies here. At the time of his accident Gwaltney was merely going to work as he normally and usually went to work. The expectation or likelihood that Gwaltney later in the day might use his car to visit out of town clients does not alter the factual situation that actually existed at the time of the accident. Evidence that Babson would reimburse Gwaltney for the parking fee and other expenses incurred if he later used his car for business visits to clients outside the city does not lead to a different result. The mishap occurred not only before any such use but before he had arrived at his place of employment. There is nothing to take the case out of the rule stated in *Chernick's Case, supra.* It is not a risk of the street case. G. L. c. 152, § 26. It is distinguishable from *Rupp's Case*, 352 Mass. 658, and from *Caron's Case*, 351 Mass. 406, cited by the employee. In the former case the employee, a nurse, who, having been ordered by her employer to return home during working hours because of a storm and to remain there on call for the remainder of the work day, was injured on her way home. In both cases the employee was injured while actually engaged in an activity in connection with her or his employment which had been specifically authorized or directed by the employer.

Since the finding that Gwaltney's injury arose out of and in the course of his employment is without evidential support, the decree must be reversed and a new decree must be entered dismissing the claim.

*So ordered.*