## ROBERT E. CARTER v. M.V. CONSTRUCTION CORPORATION ET AL.

[No. 206, September Term, 1980.]

*Decided November 10, 1980.*

The cause was argued before MORTON, LOWE and LISS, JJ.

*C. J. Kittredge,* with whom were *Welch, Murphy & Welch* on the brief, for appellant.

*William J. Rowan, III,* with whom were *Rowan, Abell, Quirk & Quinn* on the brief, for appellees.

LISS, J., delivered the opinion of the Court.

This is an appeal from a judgment of the Circuit Court for

Prince George's County overruling an order of the Maryland Workmen's Compensation Commission. Appellant, Robert E. Carter, was employed as a laborer by M.V. Construction Corporation (M.V.), appellee. The insurance carrier for M.V. was the U.S. Fidelity and Guaranty Company, also an appellee in this case.

Robert Massey, Sr. and Robert Massey, Jr. were both superintendents employed by M.V. Their duties included the supervision of construction and concrete work performed by M.V. at various jobsites. M.V.'s work consisted of supplying concrete, pouring and finishing footings, sidewalks and curbs. The total number of laborers used in performing these services varied from forty to eighty employees depending on weather, outstanding contracts and other variables.

In September of 1977, the Masseys lived across the street from each other. The appellant was assigned to a work crew which included three other laborers, one of whom was a man named Cox. Massey, Jr. was the superintendent of this job crew. Appellant's workday began at 7:30 a.m. It is conceded by appellant that at the time Carter was hired by M.V., transportation to and from the jobsite was not a part of the hiring contract, either in the guise of a money allowance to the employee or in the actual furnishing of transportation. M.V. furnished company trucks to both Masseys, which they were entitled to use to and from their homes to the designated work site.

The evidence indicated that a custom had developed between the Masseys and the members of their crews by which the laborers, as a convenience to them, could ride in the M.V. trucks from the Masseys' home to the work sites in the morning and return to the Masseys' home at the end of the day. Massey, Sr. described the arrangement as follows:

> I told none of my guys. I told them, anybody who was at my house when I left was free to go, but I didn't run a taxi service. I didn't take them home. I didn't go out of my way to pick them up. I didn't go out of my way to take them home.

Q. Let me ask you this; did you tell them if they got there by a certain time, you would take them to work?

A. Yes, they were free to ride.

Q. And also free to come back?

A. Yes.

* * *

Q. When you came home at the end of the day, what would you do with that laborer who lived two houses up? Did you let him off at your house?

A. No, I didn't stop 'till I pulled in front of the house. I pulled up the truck and everybody got out and went their own separate ways.

Sr. testified that Cox and Carter did not come to his home every morning. He said:

Q. Now, did they [referring to Cox and Carter] go every morning to your place, do you have an apartment or house?

A. House.

Q. Did they go every morning to your house?

A. No. It depends where we were working at. If they were working, like I say, I live in Riverdale; they live in Glendale. Like for working in Columbia, then, don't come that way. It is out of their way. They went straight to Columbia.

Q. If they didn't know where to go to that morning, would they go to your place to get directions?

A. No. They'd never come back to get directions, because you know every day where you are going the next day.

Q. Well, this particular morning, had you ever been to the Clinton job before?

A. Yes. The day before.

M.V. executives were aware that Massey, Sr. and Jr.

occasionally transported crew members to the jobsites in the M.V. trucks assigned to the Masseys. They were also aware that Cox on occasion rode with the Masseys and on other occasions used his own car to transport himself and other members of the job crews to and from the jobsites. The Masseys received no compensation from M.V. for transporting the work crews and Cox received no allowance or compensation when he used his own vehicle. Most of the crew members walked to the Masseys' home, but the evidence was that Cox would drive directly to the job four to six times per month without first going to the Masseys. Cox and Carter, the appellant, lived at the same address and were brothers-in-law of Massey, Sr. It was also agreed that Cox and Carter would occasionally stop at Massey, Sr.'s home for a cup of coffee before going to work. None of the other members of the work crews were given that privilege.

On September 19, 1977, the crew members had been working at a site in Prince George's County, Maryland. They had gone that morning in the Massey trucks from the Massey homes and had returned in the vehicles at the end of the day. All of the crew members knew at that time that they were to return the next day to the jobsite where they had worked on September 19th. On the morning of September 20, Cox drove his car to Massey, Sr.'s home. Carter was asleep in the back of Cox's car. Cox went into Massey, Sr.'s home for a cup of coffee. Cox decided to drive to the job in his own car, woke Carter, and Carter then left Cox's car to permit three other members of the work crew to get in. Carter then sat in the front seat of Cox's car. Massey, Sr. left his home in the M.V. truck followed by Cox. Both vehicles entered the Beltway where Cox's vehicle was involved in an accident with another vehicle. The accident occurred approximately one-half hour before Carter was due at work. As a result, the appellant sustained serious injuries. Carter filed a claim with the Maryland Workmen's Compensation Commission which, after a hearing, concluded that the appellant sustained an accidental injury arising out of and in the course of his employment. On appeal, the Circuit Court for Prince George's County

reversed the Commission and held that the Massey custom of transporting M.V. employees to work in the M.V. vehicles was merely a courtesy falling within the "coming and going" rule which generally precluded recovery for injuries sustained while going to or returning from work. It is from this judgment that the within appeal was taken.

The question presented by this appeal is:

Whether the trial court erred in ruling that the injury to the appellant did not occur in the course of his employment and that the "coming and going" rule was dispositive of the appellant's claim for compensation?

The general rule in workmen's compensation law is that injuries sustained by an employee while going to and from work do not arise out of and in the course of employment as the hazards encountered on such trips are not incident to the employer's business. *Watson v. Grimm,* 200 Md. 461, 90 A.2d 180 (1952). The Court of Appeals has further refined that holding by stating that traveling upon busy highways does not subject an employee traveling to and from work to a greater degree of danger than he would be exposed to as a member of the general public; and that the hazards encountered in such travel are not incident to the employer's business. *Salomon v. Springfield Hospital,* 250 Md. 150, 242 A.2d 126 (1968). The "going and coming" rule has resulted in a voluminous body of litigation from which the Court of Appeals distilled a number of exceptions to the application of the rule. These exceptions may be stated as follows:

(a) The free transportation exception

(b) The employer conveyance exception

(c) The premises exception

(d) The proximity or special hazard exception.

### (a) The free transportation exception

In *Ryan v. Kasaskeris,* 38 Md. App. 317, 318 A.2d 294 (1977), we had before us "the free transportation" exception to the "going and coming" rule. Judge Wilner, speaking for

this Court, traced the genesis of this exception to *Harrison v. Central Const. Corp.,* 135 Md. 170, 108 A. 874 (1919), and analyzed the cases which applied the exception to a series of differing factual situations. From these decisions we stated the "free transportation" rule as follows:

> [I]n terms of the "free transportation" exception to the "going and coming" rule, an injury occurring while an employee is on his way to or from work, which otherwise would be noncompensable as being the result of normal hazards unconnected with the employment, becomes compensable only if, under the terms of the employment, the employer is under some obligation to provide the transportation to the employee. It is that underlying obligation which brings the travel within the scope of the employment. Where that obligation exists, the method of carrying it out becomes irrelevant; but where it does not exist, there is no coverage under this exception. [38 Md. App. at 328-29.]

In determining whether there was an "underlying obligation, an agreement to furnish transportation," the arrangement need not be express but may be implied from the nature, conditions, and circumstances of the employment and the custom of the employer. *See Watson v. Grimm, supra,* at 185. In *Ryan, supra,* the facts established that the employer was obligated to furnish transportation under the terms of the arrangement of employment. In *Watson, supra,* the employer was operating the vehicle which was involved in an accident and was held to have personal control over the acts and movements of his employees. On the other hand, we conclude that the dispositive facts in the present case make the "free transportation" exception inapplicable as the appellee never had an express or implied obligation to furnish his employees transportation as an incident to their employment. Appellant could be found to have sustained his injuries in the course of his employment only if there had been an underlying contractual commitment by the

employer to furnish transportation to the employee. Under those circumstances, it would have been irrelevant whether the employer performed that obligation by supplying his own vehicle, hiring the vehicle of an independent contractor, making arrangements with a common carrier, or reimbursing employees for the cost of transportation by any means the employee might select. *See Cardillo v. Liberty Mutual Ins. Co.,* 330 U.S. 469, 67 S. Ct. 801 (1947). In the absence of such an obligation, however, and where the employee, or his foreman, as in this case, conveyed the employees to and from the place of work as an act of courtesy, an accident occurring during the journey is not covered by the Workmen's Compensation Act. *See Watson v. Grimm, supra,* at 185.

### (b) The employer conveyance exception

When a journey to or from work is made in the employer's conveyance, the journey is deemed to be in the course of employment, the reason being that the risk of employment continues throughout the journey. 1 Larson Workmen's Compensation Section 17.10 at 4-180-189 (1978) states the principle as follows:

> If the trip to and from work is made in a truck, bus, car, or other vehicle under the control of the employer, an injury during that trip is incurred in the course of employment. The justification for this holding is that the employer has himself expanded the risk of employment and the attendant risks. He has, in a sense, sent the employee home on a small ambulatory portion of the premises . . . .
>
> The reason for the rule in this section depends upon the extension of risks under the employer's control.

\* \* \*

> Another type of case in which the difference of reason must be observed is that in which a substitution for the normal mode of transportation

is made. If there is nothing more in the facts than the bare availability of transportation in the employer's conveyance, which privilege the employee foregoes in favor of using his own car, motorcycle, or bicycle, compensation has been denied. This result is consistent with the present analysis of the underlying rationale of the employer-conveyance exception, since plainly the employee is not subject to the hazards of a facility of his employer while traveling in the employee's own vehicle. [Footnotes omitted.]

It is obvious from the facts in this case that even if it might be argued that the employer exercised control over the appellant and the members of the work crew while they occupied its conveyance under the supervision and control of its superintendent, that control no longer existed when the appellant and the other members of the work crew elected to become passengers in Cox's vehicle. At that point, M.V. had no control over appellant, his co-workers or Cox's vehicle. Carter was in Cox's vehicle traveling for his own purpose, pleasure and convenience, as were Cox and the other members of the work crew.

Appellant seeks to justify his decision to ride with Cox on the date of the accident on the basis that it was dangerous for him to sit in the Massey vehicle because of loose tools in the van of the truck. The trial judge found that "the evidence does not substantiate a claim that conditions too dangerous for passengers were present in the van of the truck."

Therefore, under the facts and circumstances in this case, we find the employer's vehicle exception inapplicable.

### (c) The premises exception

The premises exception to the "going and coming" rule is usually invoked when the employee is injured while traveling along or across a public road between two portions of his employer's premises, whether coming or going, or pursuing the actual duties of his employment. 1 Larson

Workmen's Compensation Section 15.11 at 4-3, discusses that exception as follows:

> The course of employment is not confined to the actual manipulation of the tools of the work, nor to the exact hours of work. On the other hand, while admittedly the employment is the cause of the workman's journey between his home and the factory, it is generally taken for granted that workmen's compensation was not intended to protect him against all the perils of that journey. Between these two extremes, a compromise on the subject of going to and from work had been arrived at, largely by case law, with a surprising degree of unanimity: for an employee having fixed hours and place of work, going to and from work, is covered *on the employer's premises.* [Footnotes omitted.]

Section 15.14, at 4-34-40, involving travel between two parts of premises, states:

> One category in which compensation is almost always awarded is that in which the employee travels along or across a public road between two portions of his employer's premises, whether going and coming, or pursuing his active duties.
>
> Since, as shown later, a parking lot owned or maintained by the employer is treated by most courts as part of the premises, the majority rule is that an injury in a public street or other off-premises place between the plant and parking lot is in the course of employment, being on a necessary route between the two portions of the premises. But if the parking lot is purely a private one, the principle of passage between two parts of premises is not available, and an employee crossing a public street to get to the parking lot is not protected. [Footnotes omitted.]

The Court of Appeals has applied the "premises" exception to those cases involving parking lots contiguous to the

company premises. As the parking lot is generally owned, maintained and controlled by the employer, it is treated as a part of the employer's premises and includes the public street or other off-premises areas between the plant and the parking lot which encompass the necessary route between the actual premises and the parking area. *See Taylor v. Black & Decker Mfg. Co.,* 258 Md. 605, 267 A.2d 81 (1970); *Proctor-Silex Corp. v. DeBrick,* 253 Md. 477, 252 A.2d 800 (1969).

Appellant seeks to stretch the premises exception to include the Masseys' private homes and to contend that these homes were an employment site under the control and maintenance of the employer, M.V. The appellant's argument is that the work crews were required to assemble each morning at the Massey homes for job assignments and/or job changes. There was evidence to the contrary: Massey, Sr. testified that the employees knew the day before where they were to work the following day. On the specific date of the accident, it is uncontradicted that the workmen knew they were returning to the same jobsite because the work had not been completed the day before. The trial judge's rejection of the employment premises theory was supported by legally sufficient evidence, the credibility of which was for the trier of the facts. *See Schilling v. Waller,* 243 Md. 271, 220 A.2d 580 (1966); *Miller v. Mueller,* 28 Md. App. 141, 343 A.2d 922 (1975).

(d) The proximity or special hazard exception

Finally, the proximity or special hazard exception to the "going and coming" rule is thoroughly discussed in *Wiley Mfg. Co. v. Wilson,* 280 Md. 200, 373 A.2d 613 (1977). There it was held the proximity rule applies in those cases involving accidents which occur at a point where the employee is within the range of danger particularly associated with his employment. There are two requirements for the application of this rule: (1) there must be a special hazard at the off-premises point; and (2) there must be a close association of the access route with the premises so far as "coming and going" are concerned. In

identifying the "special hazard" element required by the proximity rule, the Court of Appeals stated there must be a peculiar and abnormal exposure to a common peril beyond that to which the general public was subjected. *See Pariser Bakery v. Koontz,* 239 Md. 586, 212 A.2d 324 (1965); *Maryland Paper Products v. Judson,* 215 Md. 577, 139 A.2d 219 (1958). There was no evidence in this case that the appellant was subjected to any special hazard which would make the proximity rule controlling.

The trial court concluded that the appellees had met their burden of proof in justifying its reversal of the finding of the Workmen's Compensation Commission. We do not find that the trial judge was clearly erroneous in his conclusion.

*Judgment affirmed; costs to be paid by appellant.*