488 A.2d 512

**Deonarine DHANRAJ, et ux.**

v.

**POTOMAC ELECTRIC POWER COMPANY.**

No. 1327, Sept. Term, 1984.

Court of Special Appeals of Maryland.

March 6, 1985.

Eric S. Slatkin, Langley Park (Feissner & Beckman, Langley Park, on brief), for appellants.

John Noble, Rockville (Simpson, Simpson & Noble and H. Edward Holtz, Upper Marlboro, on brief), for appellee.

Argued before GILBERT, C.J., and GARRITY and BLOOM, JJ.

GILBERT, Chief Judge.

Judge James Magruder Rea of the Prince George's County Circuit Court granted a summary judgment in favor of Potomac Electric Power Company (PEPCO) against Deonarine Dhanraj and his spouse. The court held as a matter of law that PEPCO's employee, Joseph Sandy, was not acting within the scope of his employment at the time of a motor vehicle accident. Therefore, the court concluded, PEPCO was not vicariously liable for injuries suffered by Dhanraj.

From the agreed statement of facts we learn that this case arose out of two separate but related automobile accidents. In the first occurrence, a vehicle operated by Dhanraj was struck in the rear by an automobile operated by Sandy. Both Dhanraj and Sandy alit from their cars. They exchanged information while they were standing between the rear of one car and the front of the other. Another automobile operated by Lewis Wise struck the Sandy vehicle from behind. The impact drove the Sandy vehicle forward, pinning Dhanraj and Sandy between the two automobiles. Dhanraj sued Wise, Sandy, and PEPCO.

Judge Rea ruled that, "on the undisputed facts of the case ... Sandy was not acting within the scope of his

employment with PEPCO at the time this accident occurred." The judge dismissed the case against PEPCO and entered a final judgment under Md.Rule 2–602 (former Rule 605 a).

At the time of the accident, Sandy was driving to a training center near Benning Road in Washington, D.C. The training center prepared a person to take a qualification test which would allow the individual to advance from a "Coal and Ash Equipment Operator 'B'" classification to a "Coal and Ash Equipment Operator 'A'" classification. The course is of six weeks duration and was given during Sandy's normal working hours.

Sandy, who lives in Rohrersville, Washington County, Maryland, ordinarily reports for work at PEPCO's Dickerson, Montgomery County, Maryland, plant. PEPCO did not specify the mode of transportation or the route of travel Sandy was to use in going to the Benning Road facility. On the day of the accident, Sandy used his own automobile. Sandy was not paid for gasoline or mileage, but he did receive a travel allowance from PEPCO. The allowance was based on the distance between his regular work place and the Benning Road location. The allowance was paid pursuant to an agreement between PEPCO and Local Union 1900 of the International Brotherhood of Electrical Workers. The agreement reads, in pertinent part, *ipsissimis verbis:*

"*Section 6.13.* Employees who report at the beginning of their work to, or who leave at the end of their workday from, a location other than their regular reporting location, shall be paid a travel allowance computed as follows:

(a) The Company shall establish reporting locations consistent with regular, established business requirements and will notify the Union of such locations.

(b) Using the reporting location as a center point, circles will be drawn with radii of 7, 13, 19 and 25 miles (and additional increments of 6 miles as needed) to establish zones.

(c) The zone with 7 miles of the employee's regular reporting location shall be considered at his/her base zone.

(d) Employees who, as instructed, report at the beginning of the workday to a location other than one in their base zone shall be paid an allowance based upon the zone which the location is set.

(e) Employees who, as instructed, leave the location at the end of the workday from a location other than one on their base zone shall be paid an allowance based upon the zone in which the location is set.

(f) An allowance of $1.00 shall be paid for reporting to or leaving from the first zone outside the base zone. An additional 90 cents will be paid for each additional zone that the employee reports to or leaves from at the beginning or end of his/her workday."

The issue presented by this appeal is whether PEPCO is liable under the attendant circumstances for the acts of its employee. We agree with Judge Rea that PEPCO is not liable, and, consequently, we affirm the judgment of the circuit court.

Under the doctrine of *respondeat superior*, an employer is vicariously liable for the negligent acts of its employee, if those acts are committed within the scope of his or her employment. *Globe Indem. Co. v. Victill Corp.*, 208 Md. 573, 119 A.2d 423 (1956); *Everly v. Baker*, 168 Md. 599, 178 A. 691 (1935); *Rusnack v. Giant Food, Inc.*, 26 Md.App. 250, 337 A.2d 445, *cert. denied*, 275 Md. 755 (1975). To be within the scope of employment, the conduct of the employee must be "of a kind the actor is employed to perform, occur during a period not unreasonably disconnected from the authorized period of employment, in a locality not unreasonably distant from the authorized area, and actuated at least in part by a purpose to serve the master." *A. & P. Co. v. Noppenberger*, 171 Md. 378, 390, 189 A. 434, 440 (1937), quoting the Restatement (Second) of Agency § 229 (1958).

This Court in *Rusnack v. Giant Food, Inc.*, 26 Md.App. 250, 261–65, 337 A.2d 445, 451–54 (1975), examined the "scope of employment" standard. There we said that, "[a]n act of a servant is not within the scope of employment if it is done with no intention to perform it as a part of or incident to a service on account of which he is employed." *Id.* at 263, 337 A.2d at 453. "Concisely stated the test [for whether an employee is acting within the scope of employment] is whether the servant was advancing his master's interests in doing what he did at the time he did it." *Id.* at 265, 337 A.2d at 454.

■ We think it manifest that Sandy, while commuting to the training center, was *not* advancing PEPCO's interests. Sandy's work day did not begin until he arrived at the center. It is normally held that while driving to and from work an employee is not acting within his scope of employment.[1] *Harris v. Oro-Dam Constructors*, 269 Cal.App.2d 911, 75 Cal.Rptr. 544 (1969); *Wilkie v. Stancil*, 196 N.C. 794, 147 S.E. 296 (1929); *London v. Texas Power & Light Co.*, 620 S.W.2d 718 (Tex.Civ.App.1981). *See* Annot., 52 A.L.R.2d 287, 303 (1957). It is essentially the employee's own responsibility to get to or from work. Restatement (Second) of Agency § 229, comment d (1958).

---

**1.** Maryland courts have often utilized the "coming and going" rule in worker compensation cases when analyzing the analogous question of whether an accident arose out of or in the course of employment. *See Watson v. Grimm*, 200 Md. 461, 467, 90 A.2d 180, 183 (1952). ("[T]he courts in England and the United States adopted the general rule that injuries sustained by employees while going to or returning from their regular place of work do not arise out of and in the course of their employment, as the hazards they encounter on such trips are ordinarily not incidents to the employer's business."); *Carter v. M.V. Construction Corp.*, 47 Md.App. 169, 422 A.2d 44 (1980). There are several exceptions to the rule, including one which arises when the employer provides free transportation to the employee. *See, e.g., Carter v. M.V. Construction Corp.*, 47 Md.App. 169, 422 A.2d 44 (1980); *Ryan v. Kasaskeris*, 38 Md.App. 317, 328, 381 A.2d 294, 300 (1977); *see generally*, M. Pressman, *Workmen's Compensation in Maryland*, § 2–6(8)(a) (2d ed. 1977 & Supp.1980).

The fact that Sandy was driving to a different location than that to which he usually reported and was paid a contractually mandated union allowance does not warrant an exception to the general rule. Those factors do not make the trip to the Benning Road facility any more for PEPCO's benefit than Sandy's regular commute to work.

Dhanraj cites two Maryland cases, *L.M.T. Steel Products, Inc. v. Peirson*, 47 Md.App. 633, 425 A.2d 242, *cert. denied*, 290 Md. 717 (1981), and *Regal Laundry Co. v. Abell Co.*, 163 Md. 525, 163 A. 845 (1932), to support his position that Sandy was acting within the scope of his employment. Those cases, however, are readily distinguished from the instant case. In *L.M.T. Steel Products*, an employee was driving his vehicle, during working hours, from a job site to a telephone booth to make a job related telephone call, when an accident occurred. The jury's verdict against the employer was upheld. Unlike the incident in the case *sub judice*, the happening in *L.M.T.* occurred while the employee was enroute on a clear business purpose during working hours. Here, Sandy was not, as we have stated, enroute during working hours, hence *L.M.T.* is not controlling.

A newsreporter, in the *Regal Laundry* case, drove his car, with his employer's knowledge, from Baltimore City to Crisfield, Somerset County, to cover a newsworthy event. After staying overnight in Salisbury, he was returning to Baltimore in order to receive further orders, when he was involved in a collision. According to the facts set out in the opinion of the Court, part of the reporter's regular duty was to travel from place to place to cover events that occurred in different locales. He received travel expenses, including a per mile reimbursement. The *Regal* Court held that the accident took place while the reporter was acting within the scope of his employment, inasmuch as he was obligated to return to Baltimore to receive orders. In other words, the reporter was "on the job" at the time of the accident. *Regal* contrasts with the instant case in that Sandy did not travel as part of his job, nor did he receive

reimbursement for actual travel expenses. *Regal* is inapposite to the matter before us.

The question of whether an act of an employee is within the scope of employment is usually a matter for the jury. Nevertheless, where there is no factual dispute, and where but one reasonable inference can be drawn from the facts, the question is one of law for the court. *Rusnack v. Giant Food, Inc.*, 26 Md.App. 250, 265, 337 A.2d 445, 454 (1975); *Globe Indemnity Co. v. Victill Corp.*, 208 Md. 573, 585, 119 A.2d 423, 429 (1956).

Since there was no dispute as to the fact that Sandy was enroute to the training center at the time of the accident, and because the only reasonable inference to be drawn from the fact is that Sandy was not acting within the scope of his employment during the accident, Judge Rea properly granted summary judgment in favor of PEPCO. Md.Rule 2–501 (former Rule 610); *Brown v. Suburban Cadillac, Inc.*, 260 Md. 251, 254, 272 A.2d 42, 44 (1971); *Woodward v. Newstein*, 37 Md.App. 285, 289–90, 377 A.2d 535, 538 (1977), *cert. denied*, 282 Md. 740 (1978).

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANTS.