603 A.2d 1335

**ALITALIA LINEE AEREE ITALIANE, et al.,**

v.

**John Burton TORNILLO.**

**No. 868, Sept. Term, 1991.**

Court of Special Appeals of Maryland.

April 7, 1992.

John S. Hashim, Jr. and Herbert Burgunder, Jr. (Horn & Bennett, P.A., on the brief), Baltimore, for appellants.

Luiz R.S. Simmons, Silver Spring, for appellee.

Argued before GARRITY, ALPERT and MOTZ, JJ.

ALPERT, Judge.

At trial of this worker's compensation appeal, counsel for John Tornillo, appellee, made the following statement during his closing argument.

> I think there is good news and bad news for Mr. Tornillo and I do not say this flippantly. The good news is that the law in this country is overwhelmingly on his side; the bad side is that the Maryland Court of Appeals ha[s] never directly had the issue before it. I can say that without any question.
>
> What is the issue? The issue is that Mr. Tornillo as an outside sales representative, was required as a condition of his employment to furnish a vehicle and to bring that vehicle to work with him.

Judge William M. Cave of the Circuit Court for Montgomery County agreed with him for he ruled in his favor, and so shall we.

Appellants, Alitalia Linee Aeree Italiane and Graphic Arts Mutual Insurance Company, appeal from a judgment and order of the Circuit Court for Montgomery County which, *inter alia,* held that Tornillo "did sustain an accidental injury arising out of and in the course of his employment...."[1] Appellee claimed that he suffered personal injury while in the course of Alitalia's employment. A

---

1. For the procedural history of this case prior to the circuit court's decision, entered April 25, 1991, see *Alitalia Linee Aeree Italiane v. Tornillo,* 320 Md. 192, 577 A.2d 34 (1990).

bench trial was conducted on April 19, 1991, and the parties submitted one issue to the court:

Whether the injury arose in the course of Mr. Tornillo's employment.

The parties stipulated that on January 13, 1986 John B. Tornillo, an outside sales representative employed by Alitalia Linee Aeree Italiane Airlines, was required, as part of his job, to bring with him to work, an automobile or other similar vehicle for use during his work day.

The trial court determined that the "going and coming" rule did not apply to the facts before it because Alitalia *required* appellee, as a condition of employment, to have a car. The trial court concluded that appellee faced a danger different from that which other commuters face.

So, the logical application is, yes, he is exposed to a different danger because of the requirement that he bring his car back and forth to work. Whereas somebody who does not have that as a requirement has the option of taking the Metro, car-pooling, or whatever form of transportation that might be available to them aside from bringing their car in.

The circuit court dismissed the argument that appellee could leave the car parked at work.

Well, there is no testimony one way or the other specifically on that, but the testimony is clear that he needed his car also, not just during the day, but he may have to leave and go over—he may have to go to places on his way in to work, in to the actual office, and he may have to go to places after he left the office, driving the car, and then go home.

Certainly, it could not be seriously contended that the car is there, he drives it back and forth over there, that he would drive to Baltimore, bring the car back all the way back from Baltimore, rather than to come to Rockville, to go back downtown and leave it there and take the Metro. That does not make sense.

Appellants raise a single issue, which they characterize as follows:

> **Does Maryland recognize an exception to the going and coming rule solely because it is necessary that the employee have an automobile in order to perform his job duties?**

Appellee was an outside sales representative for Alitalia. He worked out of an office located in Washington, District of Columbia. His position required him to have a car. Alitalia, following company policy, granted appellee an interest-free seven thousand dollar loan with which to purchase an automobile. He purchased a 1983 Toyota Celica. Alitalia approved the auto that appellee purchased.

Travel was a major component of appellee's job. His sales territory encompassed Maryland, Virginia, and the District of Columbia. Among other things, he delivered Alitalia promotional material to clients and prospective accounts, attended meetings, and ran company errands. At times, appellee would make sales visits on the way to work or on the way home. Alitalia reimbursed appellee for the miles travelled in furtherance of Alitalia's business. If appellee made a company trip on his way to work or on the way home, Alitalia would reimburse him for the mileage between the business stop and his home.

On January 13, 1986, while driving home (Rockville, Maryland) from the office, appellee "suffered a loss of conscienceness [consciousness]." His Celica "overturned and Tornillo was gravely injured." He was not on the way to or from a sales appointment. His automobile, however, was loaded with Alitalia materials which he needed for the coming week.

## I.

Appellants argue that the "going and coming" rule controls the facts of this case. Appellee and the lower court were of a different opinion. They believe that no Maryland case addresses the factual scenario of the case *sub judice,*

and that the going and coming rule is inapplicable to the instant case because Alitalia *required* appellee to furnish a car. Our research of Maryland case law indicates that the issue presented to us is one of first impression.

We start our inquiry with an examination of § 9–101(b)(1) of the Labor and Employment Article.

(b) *Accidental personal injury.*—"Accidental personal injury" means:

(1) an accidental injury that arises out of and in the course of employment[.]

The Court of Appeals has defined the words "out of" and the words "in the course of" on numerous occasions, *Wiley Mfg. Co. v. Wilson,* 280 Md. 200, 205, 373 A.2d 613 (1977):

As we have said on numerous occasions, the words "out of" refer to the cause or origin of the accident, while the words "in the course of" relate to the time, place and circumstances under which it occurs.

Normally, an employee going to or coming from work is not protected under § 9–101(b)(1) of the Labor and Employment Article because the employee is not acting within his scope of employment. *Wiley Mfg. Co.,* 280 Md. at 205, 373 A.2d 613; *Dhanraj v. Potomac Elec. Power Co.,* 62 Md.App. 94, 99, 488 A.2d 512 (1985), *aff'd,* 305 Md. 623, 506 A.2d 224 (1986). Gilbert and Humphreys, Maryland Workers' Compensation Handbook § 6.6 at 105 (1988) (footnotes omitted), suggest the reasons for the rule.

### § 6.6. Going To and From Work.

Injuries sustained while an employee is traveling to or from the workplace ordinarily are not compensable. This is so because the hazards which employees face during daily commuting trips are common to the public at large. The risks to which an employee is exposed while going to or coming from work are no different from the ones which confront workers while they are traveling on personal excursions. Since the Act is designed to provide compensation for work-related injuries, the courts of this

State have refused to convert employers into general insurers for their employees.

According to the Court of Appeals, *Salomon v. Springfield Hosp.*, 250 Md. 150, 154, 242 A.2d 126 (1968),

> traveling upon and crossing busy streets and highways, while it does entail some degree of danger, does not subject an employee traveling to and from work, to a greater degree of danger than he would be exposed to as a member of the general public.

There are numerous cases which adhere to the general rule. Yet, as one would expect, there are certain exceptions to the going and coming rule. Currently, Maryland recognizes six exceptions to the general rule. We delve into the various exceptions followed in this State with the following instruction from *City of Baltimore v. Jakelski*, 45 Md.App. 7, 9, 410 A.2d 1116, *cert. denied*, 287 Md. 753 (1980) (citation omitted) in mind:

> [T]he Court of Appeals indicates that each modification case must be dealt with upon its own facts, and that seems the only justification for some of the exceptions which have been considered.

*See Wiley Mfg. Co.*, 280 Md. at 205, 373 A.2d 613; *Maryland Paper Prods. Co. v. Judson*, 215 Md. 577, 584, 139 A.2d 219 (1958).

In *Carter v. M.V. Constr. Corp.*, 47 Md.App. 169, 173, 422 A.2d 44 (1980), the late Judge Thomas Hunter Lowe, speaking for the court, delineated four exceptions to the going and coming rule.

> The "going and coming" rule has resulted in a voluminous body of litigation from which the Court of Appeals distilled a number of exceptions to the application of the rule. These exceptions may be stated as follows:
> (a) The free transportation exception
> (b) The employer conveyance exception
> (c) The premises exception
> (d) The proximity or special hazard exception.

A. Free transportation exception

■ We addressed this exception in *Ryan v. Kasaskeris,* 38 Md.App. 317, 328–29, 381 A.2d 294 (1977) (emphasis added).

[I]n terms of the "free transportation" exception to the "going and coming" rule, an injury occurring while an employee is on his way to or from work, which otherwise would be noncompensable as being the result of normal hazards unconnected with the employment, becomes compensable only if, under the terms of the employment, the employer is under some *obligation to provide* the transportation to the employee. It is that underlying obligation which brings the travel within the scope of the employment. Where that obligation exists, the method of carrying it out becomes irrelevant; but where it does not exist, there is no coverage under this exception.

Here it is conceded that Alitalia did *not* have an *obligation* to provide appellee with transportation. Appellee borrowed money from a commercial lender in addition to taking out an interest-free loan from Alitalia. He told the trial court about Alitalia's travel policy.

Q [MR. SIMMONS COUNSEL FOR APPELLEE] Now, up until that point, the cost of the operation of that car had been paid by Alitalia with their free cars and with their giving you the gas.

A Yes, sir.

Q That is correct?

A Yes.

Q Now, at this point they said they were going to give you a travel allowance; did they also indicate how you were going to go about getting an automobile?

A Yes, they did.

Q What did they tell you?

A Yes, they did. They told us that they would also give us a substantial interest-free loan to purchase the car, so that way it wouldn't—you know, with this transportation

package they would help us to get this car with an interest-free loan, and it was $7,000.

Q  All right.  So, you in fact took the $7,000 from Alitalia;  correct?

A  Yes, when I bought my car I did.

Q  Okay.  Can you tell me whether or not you had to get any approval from Alitalia of the car that you were purchasing?

A  Yes, the car had to be approved by management at headquarters.

Accordingly, this exception is inapplicable here.

B.   Employer conveyance exception

In *Carter, supra* at 175–76, 422 A.2d 44, we cited Professor Larson's treatise on Workmen's Compensation for the proposition that a journey made in the employer's transportation is within the course of employment.

If the trip to and from work is made in a truck, bus, van [added in 1990 treatise], car, or other vehicle under the control of the employer, an injury during that trip is incurred in the course of employment.

.     .     .     .     .

The reason for the rule in this section depends upon the extension of risks under the employer's control.

.     .     .     .     .

Another type of case in which the difference of reason must be observed is that in which a substitution for the normal mode of transportation is made.  If there is nothing more in the facts than the bare availability of the transportation in the employer's conveyance, which privilege the employee foregoes in favor of using his own car, motorcycle, or bicycle, compensation has been denied. This result is consistent with the present analysis of the underlying rationale of the employer-conveyance exception, since plainly the employee is not subject to the hazards of a facility of his employer while traveling in the employee's own vehicle.

1 Larson, *supra*, § 17.11, .13 at 4–209, –220——222. Appellee purchased the Celica in his name. Alitalia had no control over the car. The employment contract required only that appellee furnish a car for use during the day. This exception is also inapplicable here.

C. Premises exception

█ Once again, the *Carter* court, *Carter*, 47 Md.App. at 177, 422 A.2d 44, cited professor Larson's work.

> The course of employment is not confined to the actual manipulation of the tools of the work, nor to the exact hours of work. On the other hand, while admittedly the employment is the cause of the workman's journey between his home and the factory, it is generally taken for granted that workmen's compensation was not intended to protect him against all the perils of that journey. Between these two extremes, a compromise on the subject of going to and from work has been arrived at, largely by case law, with a surprising degree of unanimity: for an employee having fixed hours and place of work, going to and from work, [comma deleted in 1990 treatise] is covered *on the employer's premises.*

1 Larson, *supra*, § 15.10 at 4–3——5 (1990) (footnotes omitted). The court also cited § 15.14, currently numbered § 15.14(a) & (b) (footnotes omitted) (emphasis added).

> One category in which compensation is almost always awarded is that in which the employee travels along or across a public road between two portions of his employer's premises, whether going and coming, or pursuing his active duties.

> Since, as shown later, a parking lot owned or maintained by the employer is treated by most courts as part of the premises, most courts, but by no means all, hold that an injury in a public street or other off-premises place between the plant and the parking lot is in the course of employment, being on a necessary route between the two portions of the premises. But if the parking lot is a purely private one, the principle of passage between two parts of the premises is not available,

and an employee crossing a public street to get to the parking lot is not protected.[2]

According to the *Carter* court, *Carter*, 47 Md.App. at 177–78, 422 A.2d 44,

> [t]he Court of Appeals has applied the "premises" exception to those cases involving parking lots contiguous to the company premises. As the parking lot is generally owned, maintained and controlled by the employer, it is treated as a part of the employer's premises and includes the public street or other off-premises areas between the plant and the parking lot which encompass the necessary route between the actual premises and the parking area.

*See Saylor v. Black & Decker Mfg. Co.*, 258 Md. 605, 267 A.2d 81 (1970); *Proctor–Silex v. DeBrick*, 253 Md. 477, 252 A.2d 800 (1969). This exception is inapplicable to the factual scenario before us. Appellee, apparently, suffered his injuries on a public road far removed from Alitalia's premises.

D. Proximity or special hazard exception

■ The Court of Appeals discussed this exception in *Wiley Mfg. Co. v. Wilson*, 280 Md. 200, 208, 373 A.2d 613 (1977) (citing Larson).

> Succinctly stated, the proximity rule is identified with those cases involving accidents which occur at a point where the employee is within range of dangers peculiarly associated with the employment.

The Court, quoting from Larson's treatise, pointed out that the exception has two limitations.

> The first is the presence of a special hazard at the particular off-premises point. The second is the close association of the access route with the premises, so far as going and coming are concerned.

1 Larson, *supra*, § 15.13(b) at 4–35. Appellee was on his way home when he lost consciousness and control of his car.

---

**2.** The underlined text reflects the 1990 version of § 15.14(b). At the time of the *Carter* decision, 1980, the text read as follows:
   "the majority rule is...."

The record does not reflect that he faced a peril uncommon to society or one that the public is not usually exposed to. *Pariser Bakery v. Koontz*, 239 Md. 586, 591–92, 212 A.2d 324 (1965). Thus, this exception does not apply to his situation.

E.  Special errand or mission exception

■  We quoted this exception from Larson in *Fairchild Space Co. v. Baroffio*, 77 Md.App. 494, 501, 551 A.2d 135 (1989).

> [W]hen an employee, having identifiable time and space limits on his employment, makes an off-premises journey which would normally not be covered under the usual going and coming rule, the journey may be brought within the course of employment by the fact that the trouble and time of making the journey, or the special inconvenience, hazard, or urgency of making it in the particular circumstances, is itself sufficiently substantial to be viewed as an integral part of the service itself.
>
> .    .    .    .    .
>
> [T]he special errand rule is ordinarily held inapplicable when the only special component is the fact that the employee began work earlier or quit work later than usual.
>
> .    .    .    .    .
>
> The element of urgency may supply the necessary factor converting a trip into a special errand.

1 Larson, *supra*, §§ 16.10, .14, .15 at 4–204, –208.27——.28, –.39 (footnotes omitted). Appellee was not on a special purpose or mission. Granted, he had loaded his car with Alitalia promotional materials which he planned to distribute during the week. Nevertheless, he was on his way home from work—no sales stops impeded his journey.

F.  Dual purpose exception

■  We turned to Larson, again, this time for his rendition of the dual purpose exception. *Fairchild Space Co.*, 77 Md.App. at 498–99, 551 A.2d 135.

Injury during a trip which serves both a business and a personal purpose is within the course of employment if the trip involves the performance of a service for the employer which would have caused the trip to be taken by someone even if it had not coincided with the personal journey. This principle applies to out-of-town trips, to trips to and from work, and to miscellaneous errands such as visits to bars or restaurants motivated in part by an intention to transact business there.

.  .  .  .  .

The basic dual-purpose rule, accepted by the great majority of jurisdictions, ... may be summarized as follows: when a trip serves both business and personal purposes, it is a personal trip if the trip would have been made in spite of the failure or absence of the business purpose and would have been dropped in the event of failure of the private purpose, though the business errand remained undone....

.  .  .  .  .

If work is done at home for the employee's convenience, the going and coming trip is not a business trip within the dual-purpose rule, since serving the employee's own convenience in selecting an off-premises place in which to do the work is a personal and not a business purpose. The actual performance of the work itself may, under the rules of the next sub-section, be within the course of employment; but the trip is not, since it is transfer of the location of the performance and not the performance itself that serves the employee's personal purposes.

1 Larson, *supra,* §§ 18.00, .12, .33 at 4–256, –258——274, –327 (footnote omitted). Appellee's trip home furthered his own ends. The record is devoid of information which would indicate that he was going to make a business stop on the way home or even after arriving at home. Accordingly, this exception is unavailing.

## II.

■■ Although none of the extant Maryland exceptions to the going and coming rule are applicable to the case *sub judice*, appellee's cause is not lost, for we propose to adopt another. This new exception, like the six discussed above, is recognized by Professor Larson. Moreover, it is, we believe, entirely consistent with the other exceptions and with the policy behind the "going and coming" rule.

Professor Larson states,

If the employee as part of his job is *required* to bring with him his own car, truck or motorcycle for use during his working day, the trip to and from work is by that fact alone embraced within the course of employment.

He explains the rationale for this exception is related to that of the employer-conveyance-exception and, like it:

the obligations of the job reach out beyond the premises, make the vehicle a mandatory part of the employment environment, and compel the employee to submit to the hazards associated with private motor travel, which otherwise he would have the option of avoiding.

This exception also has an additional rationale:

in addition there is at work the factor of making the journey part of the job, since it is a service to the employer to convey to the premises a major piece of equipment devoted to the employer's purposes.

1 Larson, *supra*, §§ 17.51, .52, at 4-243——244, -249——250 (footnotes omitted) (emphasis added).

Larson carefully distinguishes this exception, which he characterizes as the "own-conveyance" rule, from ordinary "going and coming" cases.

If the car trip from home to office was in the course of employment under the special rule, it would appear illogical to carve out a small segment of the total trip, that from garage to office, and for that distance reconvert the trip to a personal one. After all, the employee had to use his car to get to work because he had to have it available for his employer's purposes during the day; it follows

that he had to put the car in a garage; and thereafter he had to travel from the garage to the office. In short, the character of the journey from beginning to end was colored by the employment requirement of furnishing his own car during the day.

1 Larson, *supra,* § 17.54 at 4–254——255 (footnote omitted).

Professor Larson is not the only adherent of this exception; indeed, it seems to be the position of the majority of jurisdictions which have considered the question.[3] Appellants ask us to disregard all of the cases which follow the own conveyance exception because "[i]t is submitted that those out-of-state cases which have rejected Larson's 'own conveyance' rule are the better reasoned cases." In support of their position, appellants cite four cases: *In re Gwaltney's Case,* 355 Mass. 333, 244 N.E.2d 314 (1969); *City of Dallas v. Bradford,* 646 S.W.2d 302 (Tex.Ct.App. 1983); *Postal Telegraph v. Industrial Accident Comm'n,* 1 Cal.2d 730, 37 P.2d 441 (1934); and *Chernick's Case,* 286 Mass. 168, 189 N.E. 800 (1934).

In *In re Gwaltney's Case,* the Court reversed a lower court decision that awarded compensation to an employee who, after parking his car, injured himself (slipped on some ice) while walking towards his office. Gwaltney had planned to make some business visits, using his car, later that day. The Court stated that

---

3. *See Smith v. Workmen's Compensation Appeals Bd.,* 69 Cal.2d 814, 73 Cal.Rptr. 253, 261, 447 P.2d 365, 373 (1968) (plurality opinion); *Whale Communications v. Claimants in the Matter of the Death of Susan Lee Osborn,* 759 P.2d 848 (Colo.Ct.App.1988); *Cook v. A.H. Davis & Son, Inc.,* 567 A.2d 29, 32 (Del.Super.Ct.1989); *Pittsburgh Testing Lab. v. Kiel,* 130 Ind.App. 598, 167 N.E.2d 604, 606 (1960); *Medical Assocs. Clinic, P.C. v. First Nat'l Bank of Dubuque,* 440 N.W.2d 373, 375 (Iowa 1989); *Willis v. Cloud,* 151 So.2d 379, 381–82 (La.Ct.App.), *aff'd mem.,* 244 La. 623, 153 So.2d 415 (1963); *Borak v. H.E. Westerman Lumber,* 239 Minn. 327, 58 N.W.2d 567, 572 (1953); *White v. Atlantic City Press,* 64 N.J. 128, 313 A.2d 197, 200 (1973); *Stone v. A.L.S. Contr. Co.,* 108 A.D.2d 1036, 485 N.Y.S.2d 605, 607 (1985); *Weatherbee Elec. Co. v. Duke,* 294 P.2d 298, 301 (Okla.1955); *Liberty Northwest Ins. Corp. v. Over,* 107 Or.App. 30, 810 P.2d 876, 877–78 (1991); *Bailey v. Utah State Indus. Comm'n,* 16 Utah 2d 208, 398 P.2d 545, 547 (1965).

[t]he expectation or likelihood that Gwaltney later in the day might use his car to visit out of town clients does not alter the factual situation that actually existed at the time of the accident.   Evidence that Babson would reimburse Gwaltney for the parking fee and other expenses incurred if he later used his car for business visits to clients outside the city does not lead to a different result.

*In re Gwaltney's Case,* 244 N.E.2d at 315.   We distinguish this case, primarily, because the Court's opinion does not indicate whether Gwaltney's employer required him to furnish his own transportation for business purposes.

*City of Dallas v. Bradford,* 646 S.W.2d 302 (Tex.Ct.App. 1983), is controlled by a local statute.   The Texas statute provided that an employee cannot recover for injuries sustained during transit unless the transportation is:  (1) furnished as part of the employment contract;  (2) paid for by the employer;  (3) under the employer's control;  or (4) when the employer directs the employee to proceed from one place to another.   *City of Dallas,* 646 S.W.2d at 304 (discussing Tex.Rev.Civ.Stat.Ann. art. 8309, § 1b (West 1967)).   In addition, the *City of Dallas* court cited, with approval, *United States Fidelity & Guar. Co. v. Flanagan,* 134 Tex. 374, 136 S.W.2d 210 (Comm'n App., Section A 1940) (opinion adopted by the Texas appellate court) (decided before the enactment of the statute at issue).   *City of Dallas,* 646 S.W.2d at 305.   In *Flanagan,* the issue was whether a bicycle delivery boy could recover for injuries he suffered when a car struck him while he was riding home.   There, the commissioner (whose opinion was adopted by the Texas appellate court), did not state whether the delivery boy's employer required him to furnish his own transportation.

For a few weeks prior to the accident he had been employed by the Drug Company to deliver parcels in the City of Beaumont.   He furnished his own bicycle, kept it in repair and used same as a means of transporting the parcels.   He could not have procured or retained his job without furnishing a bicycle.

*Flanagan,* 136 S.W.2d at 211. The only non-Texas case cited by the commissioner was *Postal Telegraph v. Industrial Accident Comm'n,* 1 Cal.2d 730, 37 P.2d 441 (1934), *overruled by Smith v. Workmen's Compensation Appeals Bd.,* 69 Cal.2d 814, 73 Cal.Rptr. 253, 447 P.2d 365 (1968) (plurality opinion). *Flanagan,* 136 S.W.2d at 211. The California Supreme Court, in *Postal Telegraph,* annulled an award that the Industrial Accident Commission granted to Mahret, a motorcycle messenger, who was injured in a traffic collision while on the way to work. According to the Court, *Postal Telegraph,* 37 P.2d at 442, Mahret furnished his own vehicle:

> It may be fairly inferred that he was required to furnish and maintain the motorcycle for his use in messenger service, and, as above stated, his employer maintained no facilities for storing the car when off duty.

Nevertheless, the Court chose to follow the legal trend at that time and denied Mahret recovery. The California Supreme Court has subsequently overruled *Postal Telegraph. Smith v. Workmen's Compensation Appeals Bd.,* 69 Cal.2d 814, 73 Cal.Rptr. 253, 261, 447 P.2d 365, 373 (1968) (plurality opinion). Thus, we are, understandably, reluctant to rely upon *City of Dallas.*

The last case cited by appellants in their attempt to sway us to their point of view is *Chernick's Case,* 286 Mass. 168, 189 N.E. 800 (1934). The Massachusetts Supreme Court reversed a lower court's decision that was adverse to an insurer. On February 4, 1932, Joseph Chernick left his home earlier than he usually did to make some work-related stops that he had been unable to complete the previous day. On route to his stops, his car collided with two other automobiles and he was mortally injured. The Court denied recovery because it concluded that Chernick was not actively engaged in his employer's business as he had not reached any place where he had uncompleted work to perform. The Court did not mention whether Chernick had to furnish his own transportation.

We are persuaded to adopt the own-conveyance exception to the going and coming rule based upon the reasoning of Larson, set forth above, and that adopted by the majority of jurisdictions. We find particularly persuasive the opinion of the Colorado Court of Appeals in *Whale Communications v. Claimants in the Matter of the Death of Susan Lee Osborn,* 759 P.2d 848 (Colo.Ct.App.1988).

Susan Lee Osborn, a radio station employee, was killed while driving home from her office.[4] The Industrial Claim Appeals Office (Panel) awarded workmen's compensation benefits for Osborn's death. *Whale Communications,* 759 P.2d at 848. On appeal, the court framed the issue as follows, *Whale Communications,* 759 P.2d at 848:

> The question is whether her death is compensable solely by virtue of the fact that she was required to use her automobile to meet with clients during the work day.

Relying on the own-conveyance exception to the going and coming rule, the court affirmed the Panel's decision. *Whale Communications,* 759 P.2d at 848–9 (citations omitted).

> Generally, an injury sustained while going to or coming from work is not compensable. However, the requirement that employee bring her automobile to work for use in pursuing employer's business conferred an added benefit on employer beyond the mere fact of employee's arrival at work. Such special circumstances establish a causal connection between employee's work and her death and is an exception to the general 'going and coming' rule. The rationale for this exception is that the travel becomes a part of the job since it is a service to the employer to convey to the premises a major piece of equipment devoted to the employer's purposes. Such a requirement causes the job duties to extend beyond the

---

**4.** The court did not rule out the possibility that Osborn could have been on the way to see a customer of Whale's. *Whale Communications,* 759 P.2d at 848.

work place and makes the vehicle a mandatory part of the work environment. In addition, a requirement to provide one's own automobile for work eliminates the employee's option to utilize other means of private or public transportation and thereby avoid the very sort of hazard that caused decedent's demise.

■ Alitalia *required* appellee to furnish a vehicle for use during the business day. Appellee purchased a vehicle, partly with Alitalia's aid, and put that vehicle to both business and private use. We agree with the lower court when it concluded that it would have been senseless for appellee to keep the car parked at Alitalia's place of business in Washington. One cannot plausibly argue that appellee, after making a sales stop close to his home, drive all the way back to the office and park his car.

Appellee undertook the dangers of highway travel so that he could furnish Alitalia with an automobile. He did not have the traveling options that most commuters may partake of, such as public transportation and car-pooling. Thus, we can confidently say, his injuries *did* arise out of and in the course of his employment.

JUDGMENT AFFIRMED; APPELLANT TO PAY THE COSTS.